[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Scott Fetzer Co. v. Am. Home Assur. Co., Inc.*, Slip Opinion No. 2023-Ohio-3921.]

## NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-3921

THE SCOTT FETZER COMPANY, APPELLEE, *v.* AMERICAN HOME ASSURANCE COMPANY, INC., ET AL.; TRAVELERS CASUALTY AND SURETY COMPANY, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Scott Fetzer Co. v. Am. Home Assur. Co., Inc.*, Slip Opinion No. 2023-Ohio-3921.]**

*Insurance-policy claims—Choice-of-law rules—The choice-of-law analysis applicable to an insurer bad-faith claim is provided by Section 145 of 1 Restatement of the Law 2d, Conflict of Laws—Insurer bad-faith claims sound in tort and are not rooted in any particular text of a contract and instead arise by operation of law—Court of appeals' judgment applying Ohio law to discovery dispute related to insurer bad-faith claim affirmed.*

(No. 2022-0595—Submitted March 21, 2023—Decided November 1, 2023.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 110428, 2022-Ohio-1062.

_____

**BRUNNER, J.**

{¶ 1} In this case, we consider which choice-of-law rule applies to resolve a claim that an insurance company acted in bad faith with respect to an insured's claim for coverage. We hold that 1 Restatement of the Law 2d, Conflict of Laws, Section 145 (1971) governs this dispute. Accordingly, we affirm the judgment of the Eighth District Court of Appeals.

## I. Background

{¶ 2} This dispute arose out of environmental-cleanup and remediation work at two Superfund sites in Bronson, Michigan.[1] The affected sites include the land on which three manufacturing facilities once operated, along with nearby areas. Appellee, the Scott Fetzer Company, acquired one of those three facilities in 1968, when it merged with the facility's previous operator, Kingston Products Corporation, an Indiana firm. Pursuant to the merger agreement, Scott Fetzer acquired all of Kingston's assets and liabilities and emerged as the successor corporation. Scott Fetzer then continued to operate the facility from 1968 to 1984.

{¶ 3} In 1986, the United States Environmental Protection Agency ("EPA") identified Scott Fetzer as a potentially responsible party that would be required to investigate and remediate environmental contamination in Bronson. In the years following, the EPA pursued enforcement actions against Scott Fetzer, which led to a consent decree requiring Scott Fetzer to finance and perform the necessary remedial work. The owner of a manufacturing facility subsequently operating at the site, ITT, Inc., also sued Scott Fetzer, claiming that it was responsible for some of the contamination at ITT's facility. That action resulted in a judgment requiring Scott Fetzer to reimburse ITT for costs it had incurred in addressing the environmental damage at that facility.

---

1. The facts stated here are taken from the pleadings.

**{¶ 4}** To defray the cost of responding to these claims, Scott Fetzer turned to liability-insurance policies issued to it or Kingston in the 1960s. Specifically, it identified one general-liability insurance policy issued by the predecessor of Arrowood Indemnity Company, two excess-blanket-catastrophe liability policies issued by a predecessor of Century Indemnity Company, and one umbrella liability-insurance policy issued by American Home Assurance Company. It also identified four policies that it believed were issued to Kingston by a predecessor of appellant, Travelers Casualty and Surety Company, between 1964 and 1968.

**{¶ 5}** Scott Fetzer notified the insurance companies of the environmental claims being asserted against it, and for many years, it sought to invoke the defense-and-indemnification provisions of the policies and communicated with the insurance companies about its claims. Ultimately, however, Scott Fetzer asserts, the insurers not only did not provide the coverage and reimbursement it sought, but they did not even provide a final, comprehensive coverage determination.

**{¶ 6}** In October 2019, Scott Fetzer filed this action asserting a breach-of-contract claim against each insurance company alleging breaches of the insurance contracts at issue. Scott Fetzer also asserted a tort claim against each company based on allegations that they had acted in bad faith when handling Scott Fetzer's claims. Scott Fetzer sought relief in the form of a declaratory judgment that it is entitled to coverage under the policies, along with monetary damages for breach of contract and bad faith in handling Scott Fetzer's claims.

**{¶ 7}** Relevant to this appeal are Scott Fetzer's claims against Travelers, based on four separate insurance policies that Travelers' predecessor-in-interest allegedly issued to Kingston from 1964 to 1968. Travelers answered by disputing that the existence of the policies has been confirmed. And it denied that it has any obligation to provide coverage for Scott Fetzer's losses.

**{¶ 8}** Travelers moved to bifurcate the bad-faith claim from the breach-of-contract and declaratory-judgment claims and to stay discovery on the bad-faith

claim. It argued that its request promoted efficiency in that if Scott Fetzer failed to establish entitlement to coverage, then its bad-faith claim would have no basis.

{¶ 9} The trial court ordered the bad-faith claim bifurcated but did not stay discovery on that claim. It then stated, "The parties and the court will deal with privilege and other discovery disputes as they arise."

{¶ 10} Several months later, Scott Fetzer moved to compel Travelers to produce documents relating to its claims-handling procedures or guidelines for making coverage determinations as well as internal documents and communications relating to its handling of Scott Fetzer's claim. Travelers claimed that the information was covered by attorney-client privilege and was work product. Scott Fetzer argued that in Ohio, the attorney-client privilege does not shield from discovery documents revealing a defendant's bad faith, quoting *Boone v. Vanliner Ins. Co.*, 91 Ohio St.3d 209, 213, 744 N.E.2d 154 (2001) ("claims file materials that show an insurer's lack of good faith * * * are unworthy of [privilege] protection"). But Travelers argued that Ohio law does not apply, because Ohio's choice-of-law rules require the court to apply either Michigan or Indiana law to resolve the discovery dispute. Travelers noted that Kingston was an Indiana company that had contracted for the policies in Indiana. Michigan is the site of the insured risk. Michigan law does not recognize a cause of action for bad faith, and Indiana law does not allow discovery of materials covered by attorney-client privilege.

{¶ 11} The trial court ordered Travelers to provide it with the documents sought in the motion, along with a privilege log, so that the court could review them in camera. The court subsequently referred the matter to an administrative judge.

{¶ 12} The administrative judge reviewed the documents at issue and concluded that for purposes of his review, Ohio law applies to the discovery dispute concerning Scott Fetzer's bad-faith claim. The administrative judge applied Ohio law concerning whether attorney-client privilege applies in the context of a bad-faith claim, and he concluded that Travelers could not withhold attorney-client

4

communications that are probative of good faith in processing, evaluating, or refusing to pay Scott Fetzer's claim. The administrative judge ordered that some of the documents be produced, albeit with redactions for attorney-client communications that did not concern the bad-faith claim, and that others could be withheld entirely because they did not contain communications concerning Scott Fetzer's bad-faith claim.

{¶ 13} Travelers appealed the administrative judge's order. The trial court subsequently stayed the administrative judge's order pending that appeal.

{¶ 14} The court of appeals affirmed. It held that Ohio law governs the bad-faith discovery dispute, in part because the cause of action is a tort. 2022-Ohio-1062, ¶ 17. To reach that conclusion, the appellate court relied on the choice-of-law criteria set forth in 1 Restatement of the Law 2d, Conflict of Laws ("Restatement"). According to those criteria, Fetzer's bad-faith claim first had to be classified as either a contract claim or a tort claim because " 'different choice-of-law rules apply depending on whether the cause of actio[n] sounds in *contract* or in *tort*.' " (Emphasis sic.) *Id.* at ¶ 7, quoting *Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St.3d 474, 476, 747 N.E.2d 206 (2001).

{¶ 15} Section 6 of the Restatement, "Choice-of-Law Principles," lists general principles for choice-of-law analyses. It provides:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

1 Restatement, Section 6, at 10. Subsequent provisions provide additional principles to apply in particular situations. Rules for "an issue in tort" are set forth in Section 145,[2] while rules for particular types of torts are set forth in Sections 146 through 155. Choice-of-law rules for "an issue in contract" are set out in Section

---

2. Section 145, "The General Principle," provides:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.

1 Restatement, Section 145, at 414.

6

188,[3] followed by rules for particular types of contracts in Sections 189 through 197. Of these, Section 193 applies to disputes over the "validity of a contract of fire, surety or casualty insurance and the rights created thereby."[4] *Id.*, Section 193, at 610.

{¶ 16} Most relevant to this dispute are Sections 145, 188, and 193 of the Restatement. Scott Fetzer argued in the court of appeals that its bad-faith claim is properly understood as a tort claim and that the court should look to the criteria set out in Section 145—specifically, that Ohio is where its alleged injury from bad faith

---

3. Section 188, "Law Governing in Absence of Effective Choice by the Parties," provides:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

1 Restatement, Section 188, at 575.

4. Section 193, "Contracts of Fire, Surety, or Casualty Insurance," provides:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

1 Restatement, Section 193, at 610.

occurred and is therefore the state that has the most significant relationship to the occurrence. Travelers argued that the bad-faith claim should be viewed as a contract claim and that the choice-of-law analysis should apply the criteria in Section 188 or Section 193—specifically, the location of the subject matter of the contract and the place of contracting, which are Michigan and Indiana, respectively.

{¶ 17} The court of appeals agreed with Scott Fetzer that the bad-faith claim is a tort claim, and it therefore applied the choice-of-law rules set forth in Section 145 of the Restatement. In applying Section 145's factors, the court concluded that Ohio is the state with the most significant relationship to the parties and to Travelers' alleged failure to make a timely coverage determination. It upheld the trial court's application of Ohio law to Scott Fetzer's bad-faith tort claim.

{¶ 18} Travelers appealed to this court, asserting a single proposition of law: "Restatement (Second) § 193 governs the choice-of-law analysis for bad faith claims because they arise out of insurance contracts." We accepted jurisdiction. 167 Ohio St.3d 1470, 2022-Ohio-2633, 191 N.E.3d 450.

## II. Analysis

{¶ 19} Travelers maintains that Section 193 of the Restatement provides the choice-of-law rules for Scott Fetzer's bad-faith claim. Section 193 applies to disputes concerning the "validity" of an insurance contract and "the rights created thereby." 1 Restatement, Section 193, at 610. According to Travelers, a bad-faith claim is one of "the rights created thereby." Travelers also contends that this court essentially recognized as much in *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983). In that case, we stated that an insurer's duty to act in good faith is "[b]ased upon the relationship between an insurer and its insured" and that a breach of the duty will "give rise to a cause of action in tort against the insurer" for bad faith. *Id.* at paragraph one of the syllabus.

**{¶ 20}** Travelers also emphasizes that a bad-faith claim is effectively inseparable from an insurance contract because the contract creates the claim. As the Tenth District has stated:

> "[t]he insurance contract and the relationship it creates contain more than the company's bare promise to pay certain claims when forced to do so; implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured" when handling the insured's claims.

*Gillette v. Estate of Gillette*, 163 Ohio App.3d 426, 432, 837 N.E.2d 1283 (10th Dist. 2005), quoting *Rawlings v. Apodaca*, 151 Ariz. 149, 154, 726 P.2d 565 (1986). Finally, Travelers argues that it makes sense to apply Section 193 of the Restatement to bad-faith claims because—unlike the more general provisions of Section 145 and 188—it was drafted to reflect principles specifically relevant to the insurance context.

**{¶ 21}** Scott Fetzer contends that a bad-faith claim does not concern the "validity" of the contract and that the duty to act in good faith is not one of the "rights created thereby." As a result, Scott Fetzer argues, such a claim does not fall within the text of Section 193 of the Restatement. Scott Fetzer also contends that *Hoskins* actually supports its position. Scott Fetzer argues that contrary to Travelers' assertion, that decision specifically recognized that a claim alleging bad faith is a tort claim, which arises by operation of law. And because a claim alleging bad faith is an independent tort, Scott Fetzer says, courts in Ohio routinely distinguish between rules that apply to bad-faith claims and those that apply to breach-of-contract claims, with the former drawn from rules governing tort claims and the latter drawn from principles of contract.

**{¶ 22}** We agree with Scott Fetzer. The plain text of Section 145(1) of the Restatement states that the section provides the choice-of-law rules for "an issue in tort." 1 Restatement, Section 145(1), at 414. That naturally includes bad-faith claims, which we have held sound in tort: "Based upon the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort against the insurer." *Hoskins*, 6 Ohio St.3d 272, 452 N.E.2d 1315, at paragraph one of the syllabus; *see also Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, ¶ 8 ("Insurer bad faith is an actionable tort in this state").

**{¶ 23}** Section 193 of the Restatement, by contrast, does not contain language that would arguably cover bad-faith claims; as noted above, it states that it provides choice-of-law rules for disputes over the "validity" of an insurance contract and "the rights created thereby." 1 Restatement, Section 193, at 610. We disagree with Travelers' argument that a bad-faith claim is one of the "rights created thereby." That a bad-faith claim can be litigated only between the parties to an insurance contract does not mean that the contract creates it. Importantly, a bad-faith claim is not rooted in any particular text of the contract. Instead, as we explained in *Hoskins*, it arises by operation of law:

> The liability of the insurer [on a bad-faith claim] does not arise from its mere omission to perform a contract obligation, for it is well established in Ohio that it is no tort to breach a contract, regardless of motive. * * * Rather, the liability ari*ses from the breach of the positive legal duty imposed by law due to the relationships of the parties*. * * * This legal duty is the duty imposed upon the insurer to act in good faith and its bad faith refusal to settle

a claim is a breach of that duty and imposes liability sounding in tort.

(Emphasis added.) *Hoskins* at 276. Consequently, the existence of an insurance contract is what causes the common-law rule to apply to particular entities. The plain language of Section 193 therefore indicates that it does not apply to a bad-faith claim.

{¶ 24} Applying the "most significant relationship" test of Section 145 of the Restatement when resolving choice-of-law tort actions is consistent with decisions of courts elsewhere. *See, e.g.*, *Bates v. Ariz. Superior Court in & for Maricopa Cty.*, 156 Ariz. 46, 49, 749 P.2d 1367 (1988); *Williams v. Liberty Mut. Ins. Co.*, 741 F.3d 617, 622, 625 (5th Cir.2014); *Am. Guar. & Liab. Ins. Co. v. U.S. Fid. & Guar. Co.*, 668 F.3d 991, 996-1001 (8th Cir.2012); *Lange v. Penn Mut. Life Ins. Co.*, 843 F.2d 1175, 1179-1181 (9th Cir.1988).

{¶ 25} Travelers identifies decisions that it claims support its position, but those cases are distinguishable. *See, e.g.*, *Malbco Holdings, L.L.C. v. AMCO Ins. Co.*, D.Or No. CV-08-585-ST, 2008 WL 5205202, *5 (Dec. 11, 2008) (applying Section 193 of the Restatement to a bad-faith claim because the state at issue considered such a claim to be a "contractual claim, not a tort claim"); *Celebre v. Windsor-Mount Joy Mut. Ins. Co.*, E.D.Pa. No. CIV.A. 93-5212, 1994 WL 13840, *1 (Jan. 14, 1994) (stating that Pennsylvania's choice-of-law rules are the same "regardless of whether the action is characterized in contract or in tort"); *Kilmer v. Connecticut Indemn. Co.*, 189 F.Supp.2d 237, 246 (M.D.Pa.2002) (applying Pennsylvania's bad-faith law to a dispute over coverage of a New York loss covered by a Connecticut insurance company because the policyholders are Pennsylvania residents).

{¶ 26} Travelers also contends that a bad-faith claim should be viewed as arising out of a contract because, unlike a typical tort claim, a bad-faith claim can

be brought only by one contracting party against another. According to Travelers, that fact matters because the parties to a contract have certain justified expectations about how disputes involving the contract will be resolved, and choice-of-law rules typically seek to protect those justified expectations. *See Ohayon*, 91 Ohio St.3d at 476-477, 747 N.E.2d 206 (explaining that "the parties to a contract are largely free to negotiate the law to be applied to disputes arising thereunder" and that "[i]n the absence of such a choice, the Restatement's contractual choice-of-law rules seek to protect the justified expectations of the contracting parties"). Travelers asserts that Section 193 of the Restatement protects the justified expectations of the parties to an insurance contract by focusing primarily on the "principal location of the insured risk," *see* 1 Restatement, Section 193, Comment c, at 612. And, Travelers contends, the "principal location of the insured risk" is just as important in the context of a bad-faith claim as it is in the context of a breach-of-contract claim. According to Travelers, Section 193 therefore provides a natural fit for a bad-faith claim.

{¶ 27} We disagree. Travelers' argument does not address the different nature of a tort claim—even one, like a bad-faith claim, that is litigated where there is a contractual relationship in the background.

{¶ 28} The protection of justified expectations "is an important value" in choice of law. 1 Restatement, Section 6, Comment g, at 15. "Generally speaking, it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state." *Id.* But the Restatement also recognizes that the protection of justified expectations is less important in situations involving negligence and torts. *Id.* As we have explained:

> Unlike a contracting party, * * * a negligent tortfeasor acts
> without a conscious regard for the legal consequences of his or her

12

conduct—let alone the particular law to be applied to that conduct—
and the parties contesting liability and/or the appropriate measure of
damages for the conduct thus "have no justified expectations to
protect." Restatement at 15, Section 6, Comment g. Accordingly,
the Restatement and courts emphasize different factors when
resolving choice-of-law issues in these contextually distinct legal
fields.

*Ohayon*, 91 Ohio St.3d at 477, 747 N.E.2d 206; *see also* 1 Restatement, Section 145, Comment b, at 415-416 (tortfeasors "have few, if any, justified expectations in the area of choice of law to protect, and as to them the protection of justified expectations can play little or no part in the decision of a choice of law question"). For an issue of tort, Section 145 therefore focuses the choice-of-law analysis on factors other than the "principal location of the insured risk," 1 Restatement, Section 193, Comment c, at 612, such as the location of the injury and the location of the tortious conduct, which may be different from the location of the insured risk.

{¶ 29} So when one party to an insurance contract brings a bad-faith claim against another, Section 145 of the Restatement is the natural fit for the dispute because it focuses on factors other than the "principal location of the insured risk," 1 Restatement, Section 193, Comment c, at 612. Here, while the parties might have justified expectations about alleged breaches of the insurance contracts, Scott Fetzer's bad-faith claim is that Travelers acted without a conscious regard for the legal consequences of its conduct. Given this allegation, it is difficult to find any justified expectations that Travelers might have that are undermined by a complaint alleging bad faith sounding in tort. This is especially so given that Travelers has refused to participate in discovery. As a result, instead of focusing on factors that seek to protect justified expectations, like the "principal location of the insured

risk," we conclude that the factors identified in Section 145 are the appropriate ones to consider when determining the law applicable to bad-faith claims.

### III. Conclusion

**{¶ 30}** For these reasons, we conclude that the court of appeals correctly held that the choice-of-law analysis applicable to a bad-faith claim is provided by Section 145 of the Restatement. We therefore affirm the judgment of the Eighth District Court of Appeals.

Judgment affirmed.

DONNELLY, STEWART, and DETERS, JJ., concur.

FISCHER, J., concurs in judgment only.

KENNEDY, C.J., dissents, with an opinion joined by DEWINE, J.

_____

**KENNEDY, C.J., dissenting.**

**{¶ 31}** Because a bad-faith claim against an insurance company would not exist except for the contractual relationship between the insurer and the insured, the choice-of-law rules for insurance contracts provided by Section 193 of 1 Restatement of the Law 2d, Conflict of Laws (1971), should guide the determination of which state's laws govern the adjudication of an insurer bad-faith claim. The Eighth District Court of Appeals, however, chose not to follow Section 193 when it decided that Ohio law controls discovery disputes related to the insurer bad-faith claim that appellee, Scott Fetzer Company, asserted against appellant, Travelers Casualty and Surety Company. I would reverse the judgment of the court of appeals and remand this matter to that court for further proceedings consistent with this opinion. The majority does not, and I therefore dissent.

**{¶ 32}** Scott Fetzer alleges that it is a Delaware corporation headquartered in Ohio that is potentially liable for environmental remediation of a site in Michigan. It contends that it is covered by one or more insurance policies issued by Travelers' predecessor-in-interest to Scott Fetzer's predecessor-in-interest, an

Indiana company. Travelers is a Connecticut corporation, and it disputes that the insurance policies exist. Scott Fetzer filed this action seeking a declaration that Travelers is obligated to provide insurance coverage and asserting claims for breach of contract and for the bad-faith failure to indemnify and defend it.

{¶ 33} The trial court correctly bifurcated the coverage question from Scott Fetzer's bad-faith claim. However, this matter has come before this court because the trial court failed to stay discovery on the bad-faith claim. This prematurely obligated Travelers to respond to discovery requests about claims that would not be actionable without a determination that Travelers in fact had a duty to indemnify Scott Fetzer. Rather than permit litigation on an issue that may never ripen, the trial court should have stayed discovery on the bad-faith claim. Because it did not, this court is asked to issue what is essentially an advisory opinion about what choice-of-law rules govern a discovery dispute that should not yet have arisen in the first place, notwithstanding "our long-standing practice [that] disfavors issuing advisory opinions," *Capital Care Network of Toledo v. Ohio Dept. of Health*, 153 Ohio St.3d 362, 2018-Ohio-440, 106 N.E.3d 1209, ¶ 31.

{¶ 34} The question presented by the parties concerns what choice-of-law rules apply to Scott Fetzer's efforts to compel production of documents from Travelers that may be relevant to the insurer bad-faith claim. Scott Fetzer maintains that the choice-of-law rules for tort actions found in Section 145 of the Restatement should apply, while Travelers contends that the rules governing insurance contracts set out in Section 193 control.

{¶ 35} This court initially followed the common-law rule in tort actions that "the substantive law of the place where the injury occurred was controlling under the rule of *lex loci delicti*." *Morgan v. Biro Mfg. Co., Inc.*, 15 Ohio St.3d 339, 340, 474 N.E.2d 286 (1984). And at common law, the court had held that "where a conflict of law issue arises in a case involving a contract, the law of the state where

the contract is to be performed governs." *Schulke Radio Prods., Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 438, 453 N.E.2d 683 (1983).

{¶ 36} This court departed from these rules in 1971 to also consider the relevant interests of the states concerned. *Morgan* at 340-341. In determining how these interests should be weighed in tort cases, the court adopted Sections 6, 145, and 146 of the Restatement. *Id.* at 342. And in *Ohayon v. Safeco Ins. Co. of Illinois*, the court adopted Sections 187 and 188 for contract cases. 91 Ohio St.3d 474, 747 N.E.2d 206 (2001), paragraph two of the syllabus. Section 188 in turn incorporates Section 193. Subsequently, in *Am. Interstate Ins. Co. v. G & H Serv. Ctr., Inc.*, this court stated that it had "adopted the Restatement in its entirety" in *Morgan*. 112 Ohio St.3d 521, 2007-Ohio-608, 861 N.E.2d 524, ¶ 8.

{¶ 37} I understand that this court has said that an insurer bad-faith claim sounds in tort. *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, ¶ 8, citing *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983), paragraph one of the syllabus. "[L]iability arises from the breach of the positive legal duty imposed by law due to the relationships of the parties." *Hoskins* at 276. "This legal duty is the duty imposed upon the insurer to act in good faith and its bad faith refusal to settle a claim is a breach of that duty and imposes liability sounding in tort." *Id.* Section 145(1) of the Restatement states that "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." 1 Restatement, Section 145(1), at 414.

{¶ 38} Nonetheless, an insurer bad-faith claim depends on the existence of a contractual relationship between an insurer and insured. The determination that an insurer acted in bad faith cannot be made without first determining the rights under the insurance contract and whether the insurer violated a contractual duty

created by it. And Section 193 of the Restatement applies when the rights created by an insurance contract are at issue:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

*Id.*, Section 193, at 610.

{¶ 39} An insurer bad-faith claim may be actionable as a tort, but " '[t]he duty * * * [of an insurer to act in good faith] is immanent in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insured itself.' " (Brackets sic.) *Hoskins* at 276, quoting *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 575, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). Tellingly, Scott Fetzer pleaded its bad-faith claim as a violation of "[t]he duty of good faith and fair dealing [that] is *implicit in every insurance contract*." (Emphasis added.) As Scott Fetzer recognizes, the implied duty of good faith and fair dealing is a *contractual* duty. *See Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 42 ("every contract imposes an implied duty of good faith and fair dealing in its performance and enforcement").

{¶ 40} It appears that the violation of that duty is tortious because of the special relationship between the insurer and the insured, the great disparities of power between them, and the vulnerability of the insured at the time a claim is filed and a settlement is sought by the insurer. *See Hoskins*, 6 Ohio St.3d at 275, 452

N.E.2d 1315. But that does not change the fact that the duties in question here are based on a contract.

{¶ 41} Because the implied duty of good faith is contractual in nature and an insurer bad-faith claim is inextricably tied to the rights and obligations created by the insurance contract, Section 193 of the Restatement should govern the determination of what state's law applies to an insurer bad-faith claim. I therefore would reverse the judgment of the court of appeals and remand this matter to that court to decide in the first instance which state's law applies to this dispute under Section 193.

{¶ 42} In seeking affirmance of the court of appeals' decision in this case, Scott Fetzer maintains that another provision of the Restatement—Section 139(2)—provides the choice-of-law rules for the exercise of an evidentiary privilege and that Section 139(2) would make the law of the forum state applicable. However, that question was not resolved by the court of appeals in the first instance. As a court of last resort on state-law issues, this court "is 'a court of final review and not first view,' and it does not '[o]rdinarily * * * decide in the first instance issues not decided below.' " *Austin v. Reagan Natl. Advertising of Austin, L.L.C.*, 596 U.S. 61, 76-77, 142 S.Ct. 1464, 212 L.Ed.2d 418 (2022), quoting *Zivotofsky v. Clinton*, 566 U.S. 189, 201, 132 S.Ct. 1421, 182 L.Ed.2d 423 (2012). " 'In particular, when we reverse on a threshold question, we typically remand for resolution of any claims the lower courts' error prevented them from addressing.' " *Id.*, quoting *Zivotofsky* at 201.

{¶ 43} Moreover, Scott Fetzer's reliance on Section 139(2) of the Restatement is misplaced. Section 139(2) provides, "Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect." 1 Restatement, Section 139(2), at 385. As

Comment d to Section 139(2) explains, "[a]mong the factors that the forum will consider in determining whether or not to admit the evidence are (1) the number and nature of the contacts that the state of the forum has with the parties and with the transaction involved, (2) the relative materiality of the evidence that is sought to be excluded, (3) the kind of privilege involved and (4) fairness to the parties." *Id.* at 387.

{¶ 44} Most important here is that this controversy bears little connection to Ohio. It involves liability under one or more insurance policies for Travelers— a Connecticut corporation—to Scott Fetzer's predecessor-in-interest—an Indiana company—that covered a site in yet another state, Michigan. The only connection this controversy has to Ohio is that Scott Fetzer says that its principal place of business is in this state and it apparently sought coverage for losses it incurred at that location. Also important is the fairness to the parties that relied on the privilege, and as Comment d to Section 139(2) of the Restatement points out, "[t]he forum will take such steps as may be necessary to prevent a party to the action from taking an inequitable advantage of the privilege." *Id.* at 388. According to Travelers, the discovery sought by Scott Fetzer is privileged under Michigan and Indiana law, and it has contended "that it should not be required to produce attorney-client privileged documents that Scott Fetzer could use in trying to prove its claim for coverage in [the] coverage dispute." The existence of a privilege should not turn on what forum has been selected by a litigant.

{¶ 45} For these reasons, I would reverse the judgment of the Eighth District Court of Appeals and remand this manner to that court for it to conduct the choice-of-law analysis set forth in Section 193 of the Restatement. Because the majority does otherwise, I dissent.

DEWINE, J., concurs in the foregoing opinion.

_____

Shumaker, Loop & Kendrick, Amanda M. Leffler, Lucas M. Blower, Phillip W. Lambert, and Sarah M. Sears, for appellee.

Plunkett Cooney, Christina L. Corl, Patrick E. Winters, and Jeffrey C. Gerish, for appellant.

_____