[Cite as *Berry v. Mullet*, 2025-Ohio-2345.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| PATRICIA J. BERRY, ET AL. | : | JUDGES: |
| | : | Hon. Andrew J. King, P.J. |
| Plaintiffs-Appellees | : | Hon. Robert G. Montgomery, J. |
| | : | Hon. Kevin W. Popham, J. |
| -vs- | : | |
| | : | |
| TYLER A. MULLET, ET AL. | : | |
| | : | |
| Defendants-Appellees | : | Case No. 24CA018 |
| | : | |
| and | : | |
| | : | |
| MICHIGAN CONFERENCE OF | : | |
| TEAMSTERS WELFARE FUND | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common
                                Pleas, Case No. 23CV012


JUDGMENT:                       Reversed and Remanded


DATE OF JUDGMENT:               July 1, 2025


APPEARANCES:

For Plaintiffs-Appellees                For Defendant-Appellant

THOMAS J. INTILI                        MARK R. CHILSON
2300 Far Hills Avenue                   10619 Falls Creek Lane
Dayton, OH  45419-1550                  Dayton, OH  45458

For Defendants-Appellees

JAMES C. WRIGHT
32255 Northwestern Highway
Suite 225
Farmington Hills, MI  48334

CRAIG G. PELINI
8040 Cleveland Avenue, NW
Suite 400
North Canton, OH  44720

MATTHEW P. MULLEN
405 Chauncey Avenue, NW
New Philadelphia, OH  44663

*King, J.*

{¶ 1} Defendant-Appellant, Michigan Conference of Teamsters Welfare Fund ("MCTWF"), appeals the final journal entry of the Court of Common Pleas of Holmes County, Ohio, granting summary judgment to Defendant-Appellee, Home-Owners Insurance Company. Plaintiffs-Appellees are Patricia and Craig Berry. An additional Defendant-Appellee is Tyler Mullet. We reverse the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2} On June 7, 2014, Mullet failed to stop at a stop sign at an intersection and collided with a vehicle operated by the Berrys. The accident occurred in Holmes County, Ohio, and the Berrys reside in Sterling, Michigan; Mullet is an Ohio resident. Patricia Berry was severely injured and was care-flighted to Akron General Hospital; she underwent several surgical procedures and is still receiving treatment to this day.

{¶ 3} At the time of the accident, the Berrys were insured under a no-fault automobile policy issued by Home-Owners, a Michigan-based corporation. The policy contains a type of coverage known as personal injury protection ("PIP"). A PIP provision potentially entitles an insured to lifetime medical payments coverage for injuries sustained in an accident. Mullet was insured by State Farm. Because Patricia Berry's injuries exceeded the liability limits of Mullet's policy, Mullet is an underinsured motorist under the terms of the Berrys' Home-Owners policy.

{¶ 4} On June 3, 2016, the Berrys filed a complaint against Mullet for negligence and against Home-Owners for underinsured motorist benefits (Case No. 2016CV048). On March 14, 2018, the Berrys filed an amended complaint to add claims against Home-Owners for insurance bad faith and wrongful termination of PIP benefits. The Berrys

alleged Home-Owners failed, refused, or unreasonably delayed paying them underinsured motorist benefits. On February 14, 2022, the Berrys voluntarily dismissed their complaint without prejudice ("*Mullet I*").

{¶ 5} On February 10, 2023, the Berrys refiled their complaint against Mullet and Home-Owners asserting the same claims. The Berrys also added MCTWF as a nominal defendant and subrogee, alleging MCTWF paid medical providers for accident-related claims that Home-Owners was obligated to pay (over $95,000) under a Blue Cross Blue Shield health insurance policy managed by MCTWF. MCTWF is a self-funded trust, governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), that provides health insurance to Teamster beneficiaries, including the Berrys.

{¶ 6} On March 22, 2023, Home-Owners filed an answer and cross-claim against Mullet for subrogation, indemnity, contribution and reimbursement.

{¶ 7} On June 14, 2023, MCTWF filed an answer and cross-claim against Home-Owners for reimbursement of payments made for Patricia Berry's medical treatment. The Berrys and MCTWF sought a declaration as to who was the primary payor for Patricia Berry's medical expenses.

{¶ 8} On July 7, 2023, Home-Owners filed a motion for partial summary judgment, claiming under Michigan law, MCL 500.3145(1), the Berrys and MCTWF were precluded from seeking reimbursement for accident-related medical expenses incurred before February 10, 2022. Home-Owners alternatively argued at a minimum, the Berrys and MCTWF were precluded from seeking reimbursement for accident-related medical expenses incurred before June 16, 2021, by operation of MCL 500.3145(1) in tandem with Ohio's borrowing statute, R.C. 2305.03, effective June 16, 2021.

{¶ 9} The Berrys and MCTWF opposed the motion, arguing because the accident occurred in Ohio and their claims accrued in Ohio, Ohio's borrowing statute does not borrow the statute of limitations from Michigan as to their negligence claims against Mullet and to any reimbursement payments made to Ohio entities such as the Cleveland Clinic in this case. They argue all those claims are subject to Ohio's six-year statute of limitations.

{¶ 10} By judgment entry filed October 11, 2023, the trial court granted the motion, relying on MCL 500.3145(1) and R.C. 2305.03, and Michigan case law. The trial court found the Berrys could not recover any PIP claims against Home-Owners prior to June 16, 2021.

{¶ 11} On October 20, 2023, Mullet filed a motion for partial summary judgment consistent with the trial court's October 11, 2023 judgment entry. By judgment entry filed December 19, 2023, the trial court granted the motion.

{¶ 12} On March 29, 2024, Home-Owners filed three separate motions for partial summary judgment: one on the Berrys' bad faith claim (arguing Michigan law applies); one based on the coordination of coverage (arguing under the no-fault insurance policy, Patricia Berry's health insurance provider was the primary payor); and one on its material misrepresentation claim (arguing Michigan law applies and Patricia Berry's misrepresentations of material facts and information regarding her abilities after the accident barred her claims for no-fault benefits).

{¶ 13} On April 12, 26, and 29, 2024, the Berrys filed memorandums in opposition, arguing their tort claim for insurance bad faith is governed by Ohio law under Ohio's choice of law rules; the PIP coordination of benefits provision in the Home-Owners policy

is preempted by ERISA and MCTWF's coordination of benefits provision; and genuine issues of material fact existed as to the alleged material misrepresentations. MCTWF joined in the April 26, 2024 memorandum in opposition.

{¶ 14} On May 2, 2024, Mullet filed separate motions for summary judgment against the Berrys and MCTWF.

{¶ 15} By journal entry filed May 16, 2024, the trial court granted all three motions filed by Home-Owners, and dismissed all claims by the Berrys and MCTWF against Home-Owners. As to the bad faith claim, the trial court found Michigan law applied under the Restatement of Conflict of Laws § 145(2)(b), (c), and (d); Home-Owners's decisions to approve or deny coverage occurred in Michigan, the parties reside and/or are incorporated in Michigan, and there is no basis in Michigan law to sustain an independent tort action for bad faith. As to the coordination of benefits, the trial court found the Berrys and MCTWF failed to present sufficient evidence to refute Home-Owners's claim for coordination of benefits under MCL 550.3109(a) and Michigan common law. As to the material misrepresentation claim, the trial court found sufficient evidence of Patricia Berry's misrepresentations regarding her abilities after the accident and those misrepresentations were material, and therefore her claims are barred by the terms of the Home-Owners's policy and MCL 500.4503. The trial court further found the Berrys did not timely name a medical expert in support of their claims.

{¶ 16} On May 22, 2024, Mullet withdrew his motion for summary judgment against MCTWF as MCTWF had not filed a crossclaim against him. By journal entry filed June 6, 2024, the trial court granted Mullet's summary judgment motion against the Berrys,

finding the Berrys conceded to not having a factual or legal defense to the motion without an expert medical witness.

{¶ 17} On June 10, 2024, Home-Owners voluntarily dismissed their cross-claim against Mullet.

{¶ 18} On June 28, 2024, Home-Owners filed a motion for attorney fees with an exhibit showing a detailed breakdown of fees.  By journal entry filed September 17, 2024, the trial court denied the motion.  The trial court noted all claims and cross-claims were fully adjudicated and the matter was a final appealable order.

{¶ 19} MCTWF filed an appeal with the following assignments of error:[1]

I

{¶ 20} "THE TRIAL COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT TO HICO AND BARRING BERRYS' AND MCTWF'S CLAIMS FOR BENEFITS PRIOR TO JUNE 16, 2021 UNDER OHIO'S BORROWING STATUTE, ORC 2305.03 AND MCL 500.3145(1)."

II

{¶ 21} "THE TRIAL COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT TO HICO ON ITS CLAIM FOR COORDINATION OF BENEFITS UNDER MCL 550.3109A AND MICHIGAN COMMON LAW."

III

{¶ 22} "THE TRIAL COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT TO HICO BECAUSE THERE ARE GENUINE ISSUES OF FACT AS TO

---

[1]We note the Berrys also filed an appeal, Case No. 24CA019, which is a companion case and will be referred to in this appeal.

WHETHER PATRICIA BERRY KNOWINGLY MADE MATERIAL MISREPRESENTATIONS WHICH BAR HER CLAIMS UNDER THE NO-FAULT POLICY AND MICHIGAN LAW."

I

{¶ 23} In its first assignment of error, MCTWF claims the trial court erred in granting partial summary judgment to Home-Owners and barring any claims for benefits prior to June 16, 2021, under Ohio's borrowing statute, R.C. 2305.03, and Michigan law, MCL 500.3145(1).  We agree.

{¶ 24} In its July 7, 2023 motion for partial summary judgment, Home-Owners argued under Michigan law, MCL 500.3145(1), the Berrys and MCTWF were precluded from seeking reimbursement for accident-related medical expenses incurred before February 10, 2022.  At the time of the accident, the Michigan statute stated an action for recovery of PIP benefits "may not be commenced later than 1 year after the date of the accident [that caused] the injury unless written notice of injury as provided has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury."  Home-Owners alternatively argued at a minimum, the Berrys and MCTWF were precluded from seeking reimbursement for accident-related medical expenses incurred before June 16, 2021, by operation of MCL 500.3145(1) in tandem with Ohio's borrowing statute, R.C. 2305.03.  R.C. 2305.03, effective June 16, 2021, stated a civil action based upon a cause of action that accrued in any other state "may be commenced and maintained in this state if the period of limitation that applies to that action under the laws of that other state . . . has

expired or the period of limitation that applies to that action under the laws of this state has expired."

{¶ 25} The Berrys and MCTWF opposed the motion, arguing because the accident occurred in Ohio and their claims accrued in Ohio, Ohio's borrowing statute does not borrow the statute of limitations from Michigan as to their negligence claims against Mullet and to any reimbursement payments made to Ohio entities such as the Cleveland Clinic in this case. They argue all those claims are subject to Ohio's six-year statute of limitations.

{¶ 26} By judgment entry filed October 11, 2023, the trial court granted the motion, relying on MCL 500.3145(1) and R.C. 2305.03, and Michigan case law, citing *Devillers v. Auto Club Insurance Association,* 473 Mich. 562 (2005), and *Joseph v. Auto Club Insurance Association,* 491 Mich. 200 (2012). The trial court found the Berrys could not recover any PIP claims against Home-Owners prior to June 16, 2021.

{¶ 27} We begin our analysis with R.C. 2305.03. Under subsection (A), Ohio courts are to generally apply Ohio rules of decision regarding time lapses that would bar civil actions. Subsection (B) provides the following exception:

> (B) No tort action, as defined in section 2305.236 of the Revised Code, that is based upon a cause of action that accrued in any other state, territory, district, or foreign jurisdiction may be commenced and maintained in this state if the period of limitation that applies to that action under the laws of that other state, territory, district, or foreign jurisdiction has expired

or the period of limitation that applies to that action under the laws of this state has expired.

{¶ 28} Our inquiry then is whether the actions under review meet the definition of "tort action." The General Assembly has helpfully defined for us the term "tort action" as used in this instance: "'Tort action' means a civil action for damages for injury, death, or loss to person or property other than a civil action for damages for a breach of contract or another agreement between persons." R.C. 2305.236(F). In order to determine whether the statute requires the application of Michigan law here, we first consider whether the action brought by each party constitutes a tort action.

{¶ 29} In the case of MCTWF, we find its underlying action against Home-Owners is contractual. We reach this conclusion because MCTWF was brought into the case to determine who was the primary payor for Patricia Berry's medical expenses, MCTWF or Home-Owners. There are also two related questions: MCTWF's right of subrogation and whether ERISA preempts some of the state law with regard to coordination of benefits. Nonetheless, at its core, the question here is MCTWF's contractual obligations to the Berrys under its plan. The Berrys make no claim for injury, death, or loss of person or property directly against MCTWF. Likewise, any subrogation right MCTWF has to medical expenses recovered by the Berrys arises from its contractual relationship with the Berrys, rather than a tort.

{¶ 30} In the case of the Berrys, they made claims against Home-Owners for underinsured motorists benefits. One of their claims arises out of the same underlying question MCTWF raises, i.e., which insurer should be paying the medical expenses. In

the briefs, the parties regularly refer to these payments as PIP payments, which under Michigan's no-fault system, appear to serve a similar function as "med pay" under our UM/UIM system. The only reason Home-Owners would have any obligation to make these payments on behalf of the Berrys is because of the policy it sold them. Accordingly, we likewise conclude that as between the Berrys and Home-Owners, the claim is contractual. As such, it falls outside the scope of R.C. 2305.03(B).

{¶ 31} Therefore, we reverse the grant of partial summary judgment on these contractual claims.

{¶ 32} The remaining claim is the Berry's cause of action against Home-Owners for bad faith. The Berrys first filed their complaint on June 3, 2016, within two years of the underlying accident which occurred on June 7, 2014. While the suit was pending, sometime in early 2018, the Berrys learned Home-Owners was refusing to pay Patricia Berry's submitted medical claims. The Berrys then amended their complaint on March 14, 2018, to include bad faith claims against Home-Owners. There appears to be no argument that the 2016 complaint was timely filed under either Michigan or Ohio law. It seems similarly undisputed that the 2018 amended complaint that included the bad faith claim was timely filed under either Ohio or Michigan law.

{¶ 33} What caused the present controversy between the parties is the amendment of R.C. 2305.03(B) that became effective on June 21, 2021. We agree with the trial court that the claim for bad faith is considered a tort under Ohio law. *Dombroski v. WellPoint, Inc.*, 2008-Ohio-4827, ¶ 8, citing *Hoskins v. Aetna Life Insurance Co.*, 6 Ohio St.3d 272 (1983), paragraph one of the syllabus. Unlike the PIP claims discussed, this cause of action requires us to consider whether the bad faith claim between the Berrys

and Home-Owners accrued in Ohio or in Michigan. We conclude, as did the trial court, that the tort claim of bad faith accrued in Michigan.

{¶ 34} The Berrys argue instead of applying R.C. 2305.03(B), we should instead turn to 1 Restatement of the Law 2d, Conflict of Laws, § 145 (1971). *See e.g., Scott Fetzer Company v. American Home Assurance Company, Inc.,* 2023-Ohio-3921. But Ohio's choice of law rule takes us to the same place. The Supreme Court has directed us to follow the Second Restatement in answering choice of law questions. *American Interstate Insurance Co. v. G & H Service Center, Inc.,* 112 Ohio St.3d 521, 523. Because the underlying question sounds in a question about the statute of limitations, our analysis would be under § 142, which states in relevant part: "(1) An action will not be maintained if it is barred by the statute of limitations of the forum, including a provision borrowing the statute of limitations of another state." As discussed above, the borrowing statute requires us to look to Michigan's statute of limitations. It appears that the Michigan statute of limitations that applies to torts is MCL 600.5805(2), which provides for a three-year statute of limitations. Even if we give retroactive effect to R.C. 2305.03(B), the 2018 amended complaint was timely commenced under Michigan law. We conclude that for purposes of R.C. 2305.03(B) only, the Berrys' claim of bad faith was timely commenced.

{¶ 35} Therefore, we reverse the grant of partial summary judgment on the bad faith claim.

{¶ 36} Because we are remanding this matter to the trial court, we expressly allow the trial court to consider whether the claim for bad faith must proceed under either Ohio or Michigan substantive law. We hold this because it may well be the case that the Berrys cannot sustain this cause of action under Michigan law. *See Casey v. Auto Owners*

*Insurance Co.,* 273 Mich.App. 388, 391 (2006). The trial court retains the discretion to consider that issue and seek any additional briefings it requires on the matter.

{¶ 37} Assignment of Error I is granted.

II

{¶ 38} In its second assignment of error, MCTWF claims the trial court erred in granting partial summary judgment to Home-Owners on its claim for coordination of benefits. We agree.

{¶ 39} Home-Owners argued under the terms of its no-fault policy and Michigan law, it is not obligated to pay any outstanding medical bills that MCTWF "has paid, will pay, or is required to pay or provide." March 29, 2024 Motion for Partial Summary Judgment at 13. Home-Owners argued because the Berrys have not provided "any evidence demonstrating that its alleged outstanding medical bills were first submitted to her health insurer, that the services were within network, and that the health insurer failed to pay for the alleged outstanding medical services . . . Home-Owners is not obligated to pay for any of Plaintiff's medical bills allegedly arising from the subject accident." *Id.* at 15.

{¶ 40} In response, the Berrys and MCTWF argued the coordination of benefits provision in the Home-Owners policy is preempted by ERISA and MCTWF's coordination of benefits provision; they argued ERISA preempts state law. Berrys' April 26, 2024 Memorandum Opposing Home-Owners's Motion at 5; *see also* MCTWF's April 29, 2024 Memorandum in Opposition incorporating the Berrys' memorandum. They further argued under ERISA, "self-funded employee welfare benefit plans that provide health coverage are not health insurers," and "where a coordination of benefits provision in a self-funded

plan conflicts with a PIP COB provision, the welfare plan's provision controls." *Id.* They quoted the coordination of benefits provision of MCTWF's welfare plan as set forth in the Summary Plan Description. The relevant portions of MCTWF's Summary Plan Description were attached to the response and authenticated by the affidavit of Stephanie Cicero, Benefit Recovery Representative for MCTWF. *Id.* at Exhibits 1-4; Evid.R. 901. In her affidavit, Ms. Cicero further averred:

5. From April, 2011, to the present day, MCTWF has never coordinated health care benefits with automobile insurers under Chapter 31 of the Michigan Insurance Code.

6. Under the Plan, Michigan no-fault automobile insurers are the primary obligors for payment or reimbursement of losses due to auto-related accidental injuries or illnesses, including without limitation medical expenses, prescription drug costs, and wage losses.

{¶ 41} In reply, Home-Owners agreed ERISA preempts Michigan law if the plan is "self-funded and contains an unambiguous coordination of benefits provision that explicitly states that the no-fault insurer is the primary insurer." May 3, 2024 Reply at 1. But Home-Owners argued the Berrys and MCTWF only attached excerpts of the Summary Plan Description and failed to attach the Blue Cross Blue Shield health insurance policy. *Id.* at 2. It argued Michigan law requires an evaluation of the actual health care insurance policy and absent the policy, the trial court could not verify that it

was an ERISA funded or managed health care policy or determine whether any coordination of benefits provision is ambiguous. *Id.*

{¶ 42} By journal entry filed May 16, 2024, the trial court granted Home-Owners partial summary judgment on its coordination of benefits claim, finding the Berrys and MCTWF "have failed to present sufficient evidence" to refute Home-Owners's claim for coordination of benefits under Michigan law without further explanation.

{¶ 43} The Berrys and MCTWF produced an affidavit that authenticated the quoted portions of the Summary Plan Description that included the coordination of benefits provision. Under federal law, it is permissible for a document to function "both as the ERISA plan *and* as an SPD, if the terms of the plan so provide." (Emphasis in original.) *Board of Trustees v. Moore*, 800 F.3d 214, 220 (6th Cir. 2015). We assume, given the limited analysis, that the trial court concluded otherwise and applied Michigan law rather than the Summary Plan Description's coordination of benefit rules. Whether the coordination of benefits provision from the Summary Plan Description applies is of critical importance because it would preempt contrary state law. *Auto Owners Insurance Co. v. Thorn Apple Valley, Inc.*, 31 F.3d 371, 374 (6th Cir. 1994); *Richland Hospital, Inc. v. Ralyon*, 33 Ohio St.3d 87, 91-92 (1987).

{¶ 44} We conclude, upon review of the record, that the evidence put forward by the Berrys and MCTWF was sufficient to foreclose granting summary judgment on this matter in favor of Home-Owners. We note further that nothing in our decision precludes the trial court from allowing additional factual development regarding whether the Summary Plan Description truly serves both roles.

{¶ 45} Assignment of Error II is granted.

III

{¶ 46} In its third assignment of error, MCTWF claims the trial court erred in granting partial summary judgment to Home-Owners on the claim of material misrepresentation. Based upon our analysis in the companion case, Case No. 24CA019, under Assignments of Error III and VII, we agree.

{¶ 47} Assignment of Error III is granted.

{¶ 48} The judgment of the Court of Common Pleas of Holmes County, Ohio is hereby reversed, and the matter is remanded to the court for further proceedings.

By: King, P.J.

Montgomery, and

Popham, J. concur.