[Cite as *Amankwah v. Liberty Mut. Ins. Co.*, 2016-Ohio-1321.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JOHN M. AMANKWAH, | : | APPEAL NO. C-150360 |
| | | TRIAL NO. A-1402540 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| | : | |
| LIBERTY MUTUAL INSURANCE CO., | | |
| | : | |
| and | | |
| | : | |
| ROBERT A. WALKER, | | |
| Defendants-Appellees. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  March 30, 2016

*Dressman Benzinger LaVelle PSC*, *Kevin F. Hoskins* and *Christopher B. Markus*, for Plaintiff-Appellant,

*Frost Brown Todd LLC*, *William M. Harter* and *Katherine A. Klaeren*, for Defendants-Appellees.

Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Presiding Judge.**

{¶1}   Plaintiff-appellant John Amankwah appeals from the decision of the trial court granting summary judgment in favor of defendants-appellees Liberty Mutual Insurance Company and insurance agent Robert Walker (the "Liberty Mutual defendants") on Amankwah's claims for negligent procurement and contract reformation, arising from an accident in which Amankwah's vehicle was totaled and Amankwah had no collision coverage.  Because we determine that reasonable minds can conclude only that Amankwah's loss of his vehicle was proximately caused by his negligence and not the negligence of the Liberty Mutual defendants, his claims for negligent procurement and contract reformation fail as a matter of law, and summary judgment in favor of the Liberty Mutual defendants was proper.

*Background Facts and Procedural History*

{¶2}   The relationship between Amankwah and the Liberty Mutual defendants began in 2006, when Amankwah purchased automobile insurance through Walker for a Mercury Sable.  Amankwah obtained full, comprehensive coverage for the vehicle, which included collision coverage.  At some point, Amankwah purchased a Kia and added this car to the policy as well, which also had full coverage.  Amankwah testified that he reviewed the policy in 2006 and again when the Kia was added.  Amankwah renewed the policy for the Sable and Kia in March 2011, and approximately one month later, Amankwah purchased a Volkswagen Passat to replace his Sable.

{¶3}   Amankwah called the number for Walker's office to request an exchange of car insurance.  According to Amankwah's deposition testimony, he spoke with a woman at that office about "roll[ing] over" the policy from the Sable to

2

the Passat. Amankwah recalled that the woman had told him that his total premium for the two vehicles would be increasing because the Passat was a "foreign-made" car, and that the woman would take care of his request. At that time, Amankwah asserts that Liberty Mutual began to automatically deduct his insurance premiums from his bank account on a monthly basis.

{¶4} Amankwah testified that he "skimmed" through the April 2011 policy after he substituted the Passat, but he did not review the policy declarations page, which explained that Amankwah had no collision coverage on the Passat. The parties do not dispute that Amankwah received two more annual renewal policies, both of which also indicated the absence of collision coverage on the Passat.

{¶5} In October 2013, Amankwah was involved in a car accident, and his Passat was a total loss, valued at $14,000. Amankwah reported the loss to the Liberty Mutual defendants, who denied his request for coverage. According to Amankwah, this was the first time he realized he did not have collision coverage on the Passat. Amankwah then filed suit against the Liberty Mutual defendants for negligence and contract reformation based upon mutual or unilateral mistake.

{¶6} The Liberty Mutual defendants filed a motion for summary judgment on both claims, relying upon Amankwah's deposition testimony, and an affidavit from a senior branch manager at Liberty Mutual. The branch manager averred that he had reviewed the files and the contemporaneous notes made when Amankwah had called Liberty Mutual on April 18, 2011, to add the Passat to his policy. According to the notes, Amankwah had spoken to a man in Florida and had specifically declined collision coverage on the Passat, stating that the prior owner had collision coverage, which would last until 2015.

{¶7}   Amankwah responded to the Liberty Mutual defendants' summary-judgment motion with an affidavit addressing the contemporaneous note from his April 2011 call.  In his affidavit, Amankwah avers that when he had called Walker's office to switch vehicle coverage, he had discussed with the agency representative a transfer of the Passat's warranty from the prior owner, and not the transfer of collision coverage.  The trial court granted summary judgment in favor of the Liberty Mutual defendants.  This appeal by Amankwah ensued.

### *Negligent Procurement*

{¶8}   In his first assignment of error, Amankwah argues that the trial court erred in granting summary judgment in favor of the Liberty Mutual defendants on his negligence-procurement claim.

{¶9}   This court reviews a trial court's decision on summary judgment de novo.  *Fisher v. Archdiocese of Cincinnati*, 2014-Ohio-944, 6 N.E.3d 1254, ¶ 16 (1st Dist.), citing *Esber Beverage Co. v. LaBatt USA Operating Co., L.L.C.*, 138 Ohio St. 3d 71, 2013-Ohio-4544, 3 N.E.3d 1173, ¶ 9.  Summary judgment is proper under Civ.R. 56(C) when no genuine issues as to any material fact remain; the moving party is entitled to judgment as a matter of law; and it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party.  *Fisher*, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1997).

{¶10}  Ohio law recognizes a cause of action against an insurance agency for negligent procurement where the agency fails to act with reasonable diligence in providing an insured with requested coverage.  *See Minor v. Allstate Ins. Co.*, 111

Ohio App.3d 16, 675 N.E.2d 550 (2d Dist.1996); *Damon's Missouri, Inc. v. Davis*, 63 Ohio St.3d 605, 609, 590 N.E.2d 254 (1992), fn. 2. Ohio law also recognizes a corresponding duty on the part of an insured to review the insurance policy and know the extent of insurance coverage issued. *See, e.g., Roberts v. Maichl*, 1st Dist. Hamilton No. C-040002, 2004-Ohio-4665, ¶ 18; *Rose v. Landen*, 12th Dist. Warren No. CA2004-06-066, 2005-Ohio-1623, ¶ 16; *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 16.

{¶11} Amankwah argues that an insured's failure to review policy coverages presents an issue of comparative negligence for a factfinder in an action against an insurance agency for negligent procurement. Amankwah relies on a case from the Fourth Appellate District, *Robson v. Quentin E. Cadd Agency*, 179 Ohio App.3d 298, 2008-Ohio-5909, 901 N.E.2d 835, ¶ 27 (4th Dist.). In *Robson*, the court determined that Ohio courts differ in their treatment of negligent-procurement cases involving insureds who have breached their duty to review policies—some courts holding that the failure to review precludes a negligent-procurement claim as a matter of law, and others holding that the failure to review presents a comparative-negligence issue for a factfinder. *Id.* at ¶ 21. The *Robson* court then adopted a rule that an insured's failure to review a policy is a comparative-negligence issue for a factfinder. *Id.* at ¶ 28.

{¶12} The Liberty Mutual defendants argue that *Robson* is the minority position, especially after the Ohio Supreme Court decided *Kincaid*. *Kincaid* involved an insured's standing to file a breach-of-contract action against an insurance agency, where the insured failed to first present a claim to the agency or otherwise give notice to the agency of the loss, and the *Kincaid* court held that no justiciable controversy

existed. Although the *Kincaid* court recognized a long-standing principle among Ohio appellate courts that "[an] insured has a duty to examine the coverage provided and is charged with knowledge of the contents of the policy[,]" that precept merely aided the court in reaching its conclusion on standing and cannot be extended to negligence cases as an absolute bar to recovery. *See Kincaid* at ¶ 16, citing *Fry v. Walters & Peck Agency, Inc.*, 141 Ohio App.3d 303, 750 N.E.2d 1194 (6th Dist.2001). Therefore, we do not believe that *Kincaid* resolves the issue in this appeal.

{¶13} We also disagree that *Robson* represents a minority position. Our review of Ohio case law in actions brought by insureds against insurance agencies for negligence, where the insureds have indisputably breached their duty to review the policies, reveals that courts have reached differing results, not based upon any legal rule, but upon the unique facts of each case.

{¶14} Several courts have relied on an insured's failure to review coverage in an insurance policy in barring the insured from recovering from an insurance agency under a negligent-procurement theory. *See Nofer v. Volanski Agency, Inc.*, 414 N.E.2d 450, 1980 Ohio Misc. LEXIS 24 (C.P. Oct. 23, 1980); *First Cathothic Slovak Union v. Buckeye Union Ins. Co.*, 27 Ohio App.3d 169, 499 N.E.2d 1303 (8th Dist.1986); *Craggett v. Adell Ins. Agency*, 92 Ohio App.3d 443, 446, 635 N.E.2d 1326 (8th Dist.1993); *Fry*; *Island House Inn v. State Auto Ins. Cos.*, 150 Ohio App.3d 522, 2002-Ohio-7107, 782 N.E.2d 156 (6th Dist.); *Horak v. Nationwide Ins. Co.*, 9th Dist. Summit No. CA-23327, 2007-Ohio-3744; *Rose*, 12th Dist. Warren No. CA2004-06-066, 2005-Ohio-1623; *Tornado Techs., Inc. v. Quality Control Inspection, Inc.*, 2012-Ohio-3451, 977 N.E.2d 122 (8th Dist.).

{¶15}  For example, in *Rose v. Landen*, the Twelfth District Court of Appeals affirmed the granting of summary judgment to an insurance agency and its agent in a negligence action brought by an insured for the agent's failure to procure adequate personal-property liability coverage on a rental property.  In *Rose*, the insured owned five acres of real estate, which contained a farmhouse, and the insured maintained owner's insurance on the property with a $75,000 personal-property contents limit.  When the insured began facing financial difficulty, she sold the property, but continued to live in the farmhouse under a lease agreement and converted her owner's insurance to renter's insurance.  Approximately ten months later, the farmhouse sustained fire damage, and the insured's personal-property losses exceeded the $50,000 limit in the insurance policy.  In the negligent-procurement action, the insurance agent maintained that the insured had specifically requested $50,000 in contents limits, while the insured maintained that she had not requested a specific amount, and that she had trusted the agent's expertise on the matter.  The insured admitted that she had not read the policy nor examined its terms.

{¶16}  In affirming summary judgment against the insured on her negligent-procurement claim, the *Rose* court found that the insured had been a well-educated business woman, having owned and operated numerous businesses, and that she had stated in her deposition that she knew that she wanted a different content limit on the property at the time she sold it and obtained renter's insurance.  Based on these facts, in addition to the insured's failure to read the policy that she had in her possession for ten months, the *Rose* court found that the insured could not argue that the loss occurred as a result of any negligence by the insurance agent, and that

7

reasonable minds could only conclude that the insured's loss was proximately caused by the insured's breach. *Rose* at ¶ 20-25.

{¶17} Unlike the result in *Rose* where the insured was barred as a matter of law from recovering under a negligent-procurement theory, other courts have determined that an insured's failure to read an insurance policy presented an issue of comparative negligence for a factfinder in a negligent-procurement action. *See Robson*, 179 Ohio App.3d 298, 2008-Ohio-5909, 901 N.E.2d 835, at ¶ 27; *Bedillion v. Tri-County Ins. Agency*, 9th Dist. Summit No. 15722, 1993 Ohio App. LEXIS 648 (Feb. 3, 1993); *Gerace Flick v. Westfield Nat. Ins. Co.*, 7th Dist. Columbiana No. 01CO45, 2002-Ohio-5222; *Nichols v. Progressive Ins. Co.*, 10th Dist. Franklin No. 01AP-899, 2002-Ohio-3058.

{¶18} In *Nichols*, the Tenth Appellate District reversed the trial court's grant of summary judgment in favor of an insurance agent in a negligent-procurement action. In that case, an insured and her husband sued the insurance company and its agent after the insurance company refused to cover losses resulting from an accident where the insured's husband had been driving. At the time of the accident, the insurance policy contained a "named-driver exclusion," which explicitly voided any insurance coverage resulting from the operation of a vehicle by the insured's husband. The insured's husband had been in a previous accident and had been advised by his doctor not to drive, so the insured could only obtain insurance with the named-driver exclusion. Five or six months after obtaining the policy, the insured had called the agent to notify him of the purchase of a new vehicle. The insured testified that she had specifically told the agent that she had obtained a release from her husband's doctor allowing him to drive again. The insurance agent

8

testified that he had received a call from the insured regarding the purchase of a new vehicle, but that she had not requested a removal of the named-driver exclusion for her husband.

{¶19} The insured in *Nichols* testified that she had not read the insurance policy or declarations page to determine whether the named-driver exclusion had been removed from the policy. Ten or 11 months later, the insured, her husband, and their three children were injured in a car accident where the husband had been driving. In reversing the grant of summary judgment in favor of the insurance agent on a negligent-procurement claim, the *Nichols* court determined that the insured's failure to read the policy did not bar the claim as a matter of law.

{¶20} The courts in *Nichols* and *Rose* reached different results based upon the particular facts. The *Nichols* court determined that the insured's failure to read the declarations page, without more, could not have been the proximate cause of the loss as a matter of law. By contrast, in *Rose*, the court relied on the following undisputed facts in finding that the insured's negligence outweighed any negligence by the insurance agency in failing to obtain a higher contents limit: (1) the sophistication of the insured, (2) her testimony that she wanted to change the contents limit at the time she converted her owner's policy to a renter's policy, but that she did not discuss the contents limit with her agent, and (3) her failure to read the insurance policy. *See Rose*, 12th Dist. Warren No. CA2004-06-066, 2005-Ohio-1623, at ¶ 20.

{¶21} Like in *Rose*, the loss in this case goes beyond Amankwah's failure to read the insurance policy. According to Amankwah's deposition testimony, he is highly educated with a Ph.D. in communications and holds a position as a professor

9

at Mount Saint Joseph University. When he called the number to Walker's office to "roll over" the insurance from his Sable to his Passat, Amankwah stated that the woman at the office had told him that his total premium would be increasing, because the Passat was a "foreign-made" vehicle. Although Amankwah expected his premiums to increase, he did not notice that his premiums actually decreased. Amankwah attempts to downplay his oversight because, at the time he obtained insurance on the Passat, Liberty Mutual began withdrawing the premiums on a monthly basis from his bank account. Thus, not only did Amankwah fail to read the policy declarations for two years, when a simple glance would have revealed the absence of collision coverage, but he also failed to examine his bank account and take notice that Liberty Mutual had decreased and not increased his premiums.

{¶22} Amankwah argues that he had no duty to review the policy declarations with regard to his Passat, because the policy was a renewal or replacement policy, and thus, Amankwah states, the change in collision coverage on the Passat should have been brought to his attention by bold-face type and capital letters. *See Allstate Ins. Co. v. Croom*, 8th Dist. Cuyahoga No. 95508, 2011-Ohio-1697 (recognizing that an insured can assume that a renewal or replacement policy contains the same terms as an original policy unless the insured receives adequate notice as to a change in policy conditions); *MCD Acquisition Co. v. N. River Ins. Co.*, 898 F.Supp.2d 942 (N.D.Ohio 2012).

{¶23} *Croom* and *MCD Acquisitions* involved unilateral policy changes made by insurance companies to insureds' policies, which were due to expire and coming up for an annual renewal. The change to Amankwah's insurance policy was brought about by a condition he changed—selling the Sable and buying the Passat—not a

periodic renewal of a policy with a condition changed by the insurance company. Amankwah knew his policy would change by virtue of insuring a newer, foreign-made vehicle, causing his premium to increase. Therefore, the rule in *Croom* does not extend to Amankwah's situation, and we determine that Amankwah's request to insure his Passat came with a duty to review the insurance policy and declarations.

{¶24} Like the *Rose* court, we determine that based upon these particular facts reasonable minds can conclude only that Amankwah's loss of his vehicle was proximately caused by his negligence, and not the negligence of the insurance agent or Liberty Mutual. *See Rose*, 12th Dist. Warren No. CA2004-06-066, 2005-Ohio-1623, at ¶ 24-25; Civ.R. 56(C); *Temple*, 50 Ohio St.2d at 327, 364 N.E.2d 267. Therefore, we overrule Amankwah's first assignment of error.

### Contract Reformation

{¶25} In his second assignment of error, Amankwah asserts that the trial court erred in granting summary judgment in favor of the Liberty Mutual defendants on Amankwah's claim for reformation of the insurance policy.

{¶26} An insurance policy may be "reformed" to correct a mutual mistake by the insured and the insurer, or to correct a unilateral mistake made by the insurer in failing to issue a policy in accordance with a prior agreement of the parties. *Snedegar v. Midwestern Indemn. Co.*, 44 Ohio App.3d 64, 69-70, 541 N.E.2d 90 (10th Dist.1988). Reformation is an equitable remedy available to a complaining party who has acted with reasonable diligence, so where a complaining party has failed to read a contract, equitable relief in the form of contract reformation is generally prohibited. *See Priore v. State Farm Fire & Cas. Co.*, 8th Dist. Cuyahoga

No. 99692, 2014-Ohio-696, ¶ 26-28; *Weiner v. Kopp*, 1st Dist. Hamilton Nos. C-960611 and C-960632, 1997 Ohio App. LEXIS 2717, *11 (June 25, 1997).

{¶27} Amankwah cannot claim relief on the grounds of mistake when the loss occasioned by the alleged mistake was the result of his own negligence as a matter of law.  Therefore, we overrule Amankwah's second assignment of error.

### Conclusion

{¶28} In conclusion, we affirm the decision of the trial court entering summary judgment in favor of the Liberty Mutual defendants.

Judgment affirmed.

**MOCK, J.,** concurs.
**STAUTBERG, J.,** dissents.

Please note:

The court has recorded its own entry on the date of the release of this opinion.