[Cite as *Eastlawn Properties, L.L.C. v. State Auto. Mut. Ins. Co.*, 2025-Ohio-1475.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| EASTLAWN PROPERTIES, LLC, | : | APPEAL NO. C-240277 |
| | | TRIAL NO. A-2300885 |
| Plaintiff-Appellant, | : | |
| vs. | | |
| | : | *O P I N I O N* |
| STATE AUTOMOBILE MUTUAL | | |
| INSURANCE COMPANY, | : | |
| Defendant-Appellee. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: April 25, 2025

*Gottesman & Associates, LLC, Zachary Gottesman, Crehan Thumann & Hillerich,
Robert J. Thumann* and *Laura I. Hillerich*, for Plaintiff-Appellant,

*Rolfes Henry Co., LPA, Zachary F. McCune* and *Matthew F.X. Craven*, for Defendant-
Appellee.

**CROUSE, Judge.**

**{¶1}** Plaintiff-appellant Eastlawn Properties, LLC, ("Eastlawn") obtained an insurance policy from defendant-appellee State Automobile Mutual Insurance Company, ("State Auto") to insure an apartment building owned by Eastlawn. The apartment building was severely damaged in a fire just three days after the policy took effect, and Eastlawn submitted an insurance claim to State Auto. After much back and forth between the parties, State Auto ultimately paid the full policy limits, although that did not cover the total cost of repairs to the property. Dissatisfied with how State Auto had handled its claim, Eastlawn filed suit against State Auto, asserting claims for breach of contract, bad faith, promissory estoppel, estoppel/waiver of the policy's "code upgrade" coverage limitation, negligent misrepresentation, and fraud. The complaint also sought punitive damages.

**{¶2}** The trial court dismissed the estoppel claim and subsequently granted summary judgment to State Auto on all remaining claims. Eastlawn now appeals, arguing in two assignments of error that the trial court's grant of State Auto's motion for summary judgment and dismissal of the estoppel claim were in error. We hold that the trial court erred in granting summary judgment to State Auto on the bad-faith claim, as genuine issues of material fact exist as to whether State Auto acted in bad faith in its handling and processing of Eastlawn's insurance claim. The trial court's judgment is affirmed in all other respects.

## I. *Factual and Procedural History*

**{¶3}** Eastlawn obtained a "Businessowners Policy" from State Auto, effective November 29, 2018. The policy covered a nine-unit apartment building located at 2111 Lawn Avenue in Norwood, Ohio.

**{¶4}** As set forth on the policy's declarations page, it contained a building

coverage limit in the amount of $515,000 and a debris removal limit of $25,000. Although not listed on the declarations page, the policy also contained an additional $10,000 limit for "Increased Cost of Construction." With respect to this additional coverage for the increased cost of construction, the policy provided that "we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property." It further provided that State Auto would not pay for the increased cost of construction "[u]ntil the property is actually repaired or replaced."

{¶5} The policy also contained a provision addressing legal action against State Auto. It provided that legal action could not be brought against State Auto "under this insurance" unless "[t]he action is brought within two years after the date on which the direct physical loss or damage occurred."

### A. The Property is Damaged and a Claim is Made

{¶6} On December 2, 2018, three days after the policy took effect, Eastlawn's property was damaged in a fire. Eastlawn reported the damage to State Auto. Jeff Maxwell, a State Auto adjuster, was assigned to the claim. Maxwell met Sean Scallan, owner of Eastlawn, at the property. Scallan testified during his deposition that at the time of the meeting with Maxwell, he had not yet received a copy of the insurance policy. During their meeting, Maxwell provided him with the policy's declarations page, noted the policy's $515,000 coverage limit, and explained that there were other pockets of money in the policy to be utilized if needed. According to Scallan, Maxwell never mentioned the $10,000 limit for the increased cost of construction. Maxwell, however, testified in his deposition that he informed Scallan during their meeting of all policy limits, including the limit on the increased cost of construction. Maxwell further testified that he emailed a copy of the policy to Scallan after their meeting.

**{¶7}** Eastlawn hired Paul Davis Restoration ("Paul Davis") to restore and repair the building after the fire. Eastlawn and Paul Davis signed a work authorization that provided "owner understands that contractor has no connection with owner's insurance company or its adjuster and that owner alone has authority to authorize contractor to make said repairs. Owner also understands and agrees that owner is solely responsible for payment of the total cost, including contractor fees for said repairs."

**{¶8}** Paul Davis worked with Maxwell to reach an agreed estimate of approximately $431,000 for the initial scope of repairs to the building. This initial estimate did not include the costs to bring the building up to code, which fell under the policy limits for the increased cost of construction, rather than under the $515,000 building-coverage limit. Paul Davis began its restoration work, and, for a majority of the project, Jason Mathein was the project manager for Paul Davis.

**{¶9}** On January 16, 2019, State Auto issued the first payment under the policy to Eastlawn. This payment of $765.82 was for the costs of boarding up the building. On February 8, 2019, State Auto issued Eastlawn a check for $298,733.27 for building restoration, and another check to the city of Norwood for $58,000. This check was for "demolition holdback," and was ultimately given to Eastlawn after Norwood issued an occupancy permit for the covered property.

**{¶10}** In a June 12, 2019 email, Mathein informed Maxwell that Norwood was requiring the building mechanicals to be brought up to code. And on November 6, 2019, Mathein emailed Maxwell a supplemental estimate in the amount of $232,977.66 that he explained was for items missed during the initial estimate and for the code upgrades required by Norwood.

**{¶11}** In a responsive email sent November 12, 2019, Maxwell asked Mathein

4

whether certain items in the supplemental estimate were for code upgrades. He also asked Mathein to provide a copy of the municipality's letter requiring the code upgrades and copies of the mechanical bids. According to Maxwell, the letter from the municipality was needed because "the ordinance and law coverage requires that we have proof that the municipality was requiring it." Maxwell explained that he wanted clarification as to what portion of the supplemental estimate was for code upgrade verses supplemental repairs. Mathein sent Maxwell the mechanical bids that had been requested and told Maxwell that he would ask Norwood for a letter stating that the municipality was requiring the code upgrades.

{¶12} Maxwell also emailed Scallan on November 12, 2019, informing him that he had received the supplemental estimate from Mathein and had asked Mathein for supporting documentation. The email stated that, after receiving and reviewing the requested documentation, Maxwell would "ask any additional questions that need to be asked and then process payment for same."

{¶13} On November 18, 2019, Maxwell sent Mathein an email with the subject line "For your review and our discussion." The email included an attached spreadsheet containing a breakdown of the costs for each mechanical bid that Mathein had prepared in the supplemental estimate, the initial estimate that the parties had reached for each category, and the resulting balance between the two figures, which was $215,677.02. Thus began an arduous, lengthy discussion between Maxwell, Mathein, and Scallan over the cost of the code upgrades and whether they were covered under the State Auto policy.

{¶14} On November 20, 2019, Mathein emailed Maxwell asking, "So the supplemntal [sic] check will be for $215,677.02? [I]s that the way I am reading this spreadsheet?" Maxwell did not respond. Mathein sent a follow-up email to Maxwell

on December 3, 2019, stating, "I was wondering if the excel spreadsheet you sent me for Sean Scallan's project (Eastlawn Apartments) was the total ($215,677.02) after your adjustments for the supplement?" Maxwell responded that same day, stating "I am working on the Scallon [sic] figures." Maxwell testified that, at the time of this email exchange, he was still trying to determine what "buckets" to put expenses in because he had not yet received a letter from the municipality regarding code upgrades. Mathein again followed up with Maxwell via email on December 12, 2019, to inquire about release of the supplemental funds in the amount of approximately $215,000 and to inform Maxwell that Paul Davis needed the supplement because it was running into money issues. Maxwell responded the following day, stating, "When I get back late today I will get back to that." Maxwell never provided an additional response.

{¶15} On January 8, 2020, Scallan emailed Maxwell and asked him to "release the supplement and recoverable depreciation monies." Maxwell responded two days later and told Scallan that he would try to call him that day to discuss. Scallan sent follow-up emails to Maxwell on January 14 and 16 trying to make contact. A January 16, 2020 email from Scallan to Maxwell stated, "Jason [Mathein] has reached out to me numerous times asking for the supplemental funds and some of the depreciation to be released. After tomorrow he will have to stop any further work until he gets some of the monies. He's only two weeks away from being done. Can you please help." There is no responsive email from Maxwell in the record.

{¶16} Scallan again emailed Maxwell on January 20, 2020, asking him to confirm the amount of the check that he would be processing that day and what those funds would cover. He also asked Maxwell to explain why State Auto would not pay the full balance on the supplemental building code upgrades. When presented with

6

this email during his deposition, Maxwell could not recall if he had spoken with Scallan, but he conceded that it was possible that they had spoken and that he had told Scallan he would be issuing him a check.

**{¶17}** Maxwell responded to Scallan via email on January 21, 2020, stating that he would be processing a check that included $135,621.47 for supplemental building repairs and withheld depreciation, as well as $10,000 for code upgrades/increased cost of construction. The email explained that no coverage was denied, but that Scallan's policy had a limit of $10,000 for the code upgrades. It also stated, "Unfortunately, Jason [Mathein] was not communicating the ultimate cost and scope of what he was doing on the code work until the end. Once the documentation was received, we responded accordingly." Maxwell testified that, after receiving authorization from his supervisor, Jeff Fink, he ultimately processed the policy limits for the increased cost of construction without receiving a letter from the municipality stating that such upgrades were required.

**{¶18}** Approximately one week later, Mathein sent an email to Maxwell and Scallan stating that he had reviewed the job and adjusted numbers for the code upgrade work, and that he now attributed $58,229.10 to code upgrades. In response to this email, Maxwell asked Mathein how he arrived at the new number for code upgrades and requested documentation from the subcontractors showing that the submitted code upgrades were required by the building department. Maxwell testified that he was trying to determine if any of the work attributed to code upgrades could be shifted to fall under the building coverage or debris removal policy limits. He stated, "I was trying to find coverage for the insured, is what it boils down to."

**{¶19}** On February 16, 2020, Scallan emailed Maxwell and asked when he would be able to process "a check for the additional liabilities due to fire damage in the

amount of $157,447.92."[1] Maxwell responded that he would review the information and discuss with his supervisor. Scallan sent follow-up emails to Maxwell on February 20, February 28, March 4, and March 6, asking if Maxwell had spoken with his supervisor. Maxwell testified that this chain of emails likely meant he never responded or updated Scallan on additional payment.

{¶20} Scallan's insurance agent also sent several emails to Maxwell and State Auto requesting information on the processing of Scallan's claim. On March 16, 2020, Maxwell emailed Mathein again asking for documentation that Norwood was requiring the code upgrades. Maxwell testified that he needed this information in order to make funds available from the debris removal bucket. Mathein sent Maxwell information related to the code upgrades on April 6, 2020.

{¶21} On April 16, 2020, Mathein emailed Maxwell, stating, "We are still owed about $147,000+ on this job and would like to know about how long it's going to take for you and Mr. Scallan to figure out who owes what to us?" The following day, Maxwell responded with a series of follow-up questions regarding code compliance, to which Mathein promptly responded. Maxwell did not respond.

{¶22} Scallan emailed Maxwell on May 12, 2020, informing him that Paul Davis had placed a lien on his property. Scallan sent three follow-up emails over the next few weeks. Mathein also emailed Maxwell on May 19, 2020, about the status of payment.

{¶23} Maxwell finally responded to Scallan on May 27, 2020, informing him that the policy limit for the increased cost of construction had been met and that no additional monies would be processed towards that claim. And he emailed both

---

[1] This amount constituted the difference between Mathein's revised estimated cost of code upgrades in the amount of $58,229.10 and the $215,677.02 number on Maxwell's spreadsheet.

Scallan and Mathein on June 1, 2020, informing them that they had reached the policy limit for code upgrades, which fell under the coverage for the increased cost of construction. Mathein responded that same day, informing Maxwell that not all the remaining monies owed were for code upgrades.

{¶24} In June of 2020, Scallan reached out to Maxwell's supervisor, Jeff Fink, and had several exchanges with him about the claim. Then, on July 31, 2020, Maxwell told Scallan that he had re-reviewed the supplemental figures and had processed a check in the amount of $6,804.34 for building coverage. Maxwell testified that approximately $15,000 to $20,000 remained available under the building coverage section of the policy after that payment.

{¶25} Scallan emailed Maxwell on August 17, 2020, stating that, after seeing Maxwell's most recent breakdown, Paul Davis had revised its figures regarding what costs were for code upgrades and what costs were for building restoration. He asked Maxwell to review these numbers and call to discuss. After receiving no response, Scallan sent two follow-up emails to Maxwell asking if he had reviewed the most recent information and requesting another check.

{¶26} On September 8, 2020, Maxwell sent the following email to Scallan:

After review of the documentation from the subcontractors dated in March 2020 that was first provided us August 26, 2020 and my discussions with them I have requested a $40,187.98 check payable to Eastlawn Properties, LLC and US Bank representing the balance of the Building policy limit ($15,187.98) and the Debris Removal policy limit ($25,000.00).

Attached is our revised spreadsheet showing the adjustments made after our recent review and discussions with the subcontractors

9

and an updated Statement of Loss showing the payments made, and the coverages from which they were made, for your records.

Based on the above payments we have now paid everything we think is owed under the policy. If this is not your understanding please contact me within ten (10) days of this email with whatever you think has not been paid and that is owed under the policy.

**{¶27}** Eastlawn and Paul Davis reached a settlement regarding the lien that Paul Davis had placed on Eastlawn's property. In a release agreement signed October 26, 2020, Paul Davis assigned Eastlawn all rights to payment for the outstanding work performed on the property in return for payment of $92,000.

## B. *A Lawsuit is Filed*

**{¶28}** Eastlawn filed suit against State Auto on December 3, 2020, in the case numbered A-2004226. That case was voluntarily dismissed in February of 2023 and refiled on March 2, 2023, in the case numbered A-2300885. The complaint asserted claims for (1) breach of contract, (2) bad faith, (3) breach of the contract with Paul Davis to perform the code upgrades, (4) promissory estoppel, (5) estoppel/waiver of the "code upgrade" coverage limitation, (6) negligent misrepresentation, and (7) fraud. The complaint also sought an award of punitive damages.

**{¶29}** State Auto filed a partial motion to dismiss, seeking dismissal of Counts 1, 2, 3, and 5. The trial court denied the partial motion to dismiss with respect to Counts 1, 2, and 3, but it granted the motion with respect to the claim for estoppel/waiver of the "code upgrade" coverage limitation in Count 5. The court found that the doctrines of waiver and estoppel were not available to extend the terms of, or expand the coverage of, an insurance policy.

**{¶30}** After engaging in discovery, State Auto filed a motion for summary

10

judgment on all remaining claims. Eastlawn opposed State Auto's motion for summary judgment and also filed a motion for partial summary judgment on its claims for breach of contract, breach of the contract with Paul Davis, promissory estoppel, and negligent misrepresentation.

**{¶31}** The trial court issued an entry granting State Auto's motion for summary judgment and denying Eastlawn's motion for partial summary judgment. Eastlawn now appeals.

## II. *Review of the Trial Court's Grant of Summary Judgment*

**{¶32}** In its first assignment of error, Eastlawn argues that the trial court erred in granting State Auto's motion for summary judgment and denying Eastlawn's motion for partial summary judgment.

**{¶33}** We review a trial court's ruling on a motion for summary judgment de novo. *Smathers v. Glass*, 2022-Ohio-4595, ¶ 30. Summary judgment is appropriately granted where the movant establishes "that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party." *Grafton v. Ohio Edison Co.*, 1996-Ohio-336, ¶ 10, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 1994-Ohio-92, ¶ 8.

### A. *Breach of Contract*

**{¶34}** With respect to the breach-of-contract claim, the complaint alleged that State Auto breached the insurance policy by (1) failing to notify Eastlawn that it had elected to pay for the "costs to repair or replace the damaged property" and refusing to pay for the code upgrades under the building coverage limit of $515,000; (2) improperly limiting payment obligations for code upgrades to the $10,000 "Increased

Cost of Construction" limit of the policy; (3) conditioning payment for code upgrades/increased cost of construction on the production of a letter from the municipality, which was not required by the policy; and (4) failing to timely pay Eastlawn what it was owed, when it was owed.

**{¶35}** Following our review of the record, we hold that the trial court did not err in granting summary judgment to State Auto on this claim because it was barred by the policy's two-year suit-limitation provision. Courts have long found suit-limitations periods to be permissible. While the statutory limitations period for a contract in writing is six years, *see* R.C. 2305.06, "'the parties to a contract may validly limit the time for bringing an action on a contract to a period that is shorter than the general statute of limitations for a written contract, as long as the shorter period is a reasonable one.'" *Barbee v. Nationwide Mut. Ins. Co.*, 2011-Ohio-4914, ¶ 23, quoting *Sarmiento v. Grange Mut. Cas. Co.*, 2005-Ohio-5410, ¶ 11; *accord Nagel v. AIG Life Ins. Co.*, 2000 Ohio App. LEXIS 1156, *10 (1st Dist. Mar. 24, 2000) ("An insurance contract may require that an action on the contract be brought within a shorter period of time than that provided by statute, if the contractual limitation period is not unreasonable.").

**{¶36}** The policy in this case contained a section titled "Legal Action Against Us," which stated that the insured could not bring legal action against State Auto "under this insurance" unless "[t]he action is brought within two years after the date on which the direct physical loss or damage occurred." The breach-of-contract claim was a claim for legal action against State Auto under the insurance policy. And it was brought more than two years after the damage to the covered property occurred. The fire that damaged Eastlawn's property occurred on December 2, 2018. Eastlawn filed suit on December 3, 2020, one day after the suit-limitation period expired.

**{¶37}** Eastlawn attempts to circumvent its failure to timely file suit by arguing that State Auto waived the limitation clause "when it accepted liability, continued to adjust the claim for more than two-years, and never once stated its intention to rely on the Suit Limitation provision of the Policy."

**{¶38}** Under certain circumstances, a suit-limitation provision can be found to have been waived. In *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427 (1981), syllabus, the Court held that "[a]n insurance company may be held to have waived a limitation of action clause . . . by acts or declarations which evidence a recognition of liability, or acts or declarations which hold out a reasonable hope of adjustment and which acts or declarations occasion the delay by the insured in filing an action on the insurance contract until after the period of limitation has expired." The Court reiterated this holding more recently in *Dominish v. Nationwide Ins. Co.*, 2011-Ohio-4102, ¶ 10, where it held, "To be deemed to have waived its right to enforce a limitation-of-action clause pursuant to our holding in *Hounshell*, an insurance company must have either recognized liability or held out a reasonable hope of adjustment and by doing so, induced the insured to delay filing a lawsuit until after the contractual period of limitation expired." *See also Nagel,* 2000 Ohio App. LEXIS 1156, at *10 (1st Dist. Mar. 24, 2000).

**{¶39}** On this record, there exists no genuine issue of material fact as to whether State Auto waived the suit-limitation provision—it did not. State Auto recognized that Eastlawn was entitled to coverage under the policy for repairs to the covered property. But it never recognized liability for the supplemental estimate in the amount requested by Eastlawn or for payment of the costs of code upgrades exceeding the available coverage limits. While State Auto issued ongoing payments under the policy as it received additional documentation regarding what costs were for code

13

upgrades verses general repair and restoration, it took no action to induce Eastlawn to delay filing suit until the contractual limitation period had expired. This is well documented in the record.

**{¶40}** In late May and early June of 2020, Maxwell emailed both Scallan and Mathein to inform them that the policy limit for code upgrades/increased cost of construction had been met. And on September 8, 2020, State Auto informed Eastlawn that it was issuing a check that would represent the balance of the building policy limit and the debris removal policy limit. State Auto clearly stated in the email that "we have now paid everything we think is owed under the policy." So, as of September 8, 2020, Eastlawn was indisputably aware that State Auto intended to issue no additional payments. Eastlawn had almost three months remaining in the contractual-limitation period to file suit, and it failed to do so.

**{¶41}** Contrary to Eastlawn's assertion, State Auto was not required to notify Eastlawn that it intended to rely on and enforce the suit-limitation provision. Eastlawn relies on *Dominish* and *Hounshell* in support of its argument that such notification was required. While the insurance company in *Dominish* had notified the insured of the applicable suit-limitation provision, the court never held that such notification was necessary to avoid waiver of the provision. *Dominish*, 2011-Ohio-4102 at ¶ 10, 14-15, 17. Nor did *Hounshell* impose such a requirement. Both *Dominish* and *Hounshell* make clear that a suit-limitation provision in an insurance policy is waived where the insurer either recognizes liability or holds out a reasonable hope of adjustment that induces the insured to delay filing a lawsuit until the contractual period of limitations has expired. *Dominish* at ¶ 10; *Hounshell*, 67 Ohio St.2d 427, at syllabus. Neither hold that such a provision cannot be enforced unless an insurer first informs the insured of an intent to invoke the provision.

**{¶42}** Because State Auto did not waive the suit-limitation provision in the insurance policy, and because Eastlawn filed suit after the limitation period had expired, the trial court did not err in granting summary judgment to State Auto on the claim for breach of contract.

## B. Bad Faith

**{¶43}** Eastlawn next challenges the trial court's grant of summary judgment on its claim that State Auto acted in bad faith in the handling and processing of Eastlawn's claim. If proven, a bad-faith claim allows for a plaintiff to recover extracontractual damages and does not limit the plaintiff to recovering the damages covered by the insurance policy. *Grange Mut. Cas. Co. v. Rosko*, 146 Ohio App.3d 698, 712 (7th Dist. 2001); *LeForge v. Nationwide Mut. Fire Ins. Co.*, 82 Ohio App.3d 692, 700 (12th Dist. 1992). Punitive damages may also be recovered upon a showing of actual malice on the part of the insurer. *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272 (1983), paragraph two of the syllabus.

**{¶44}** An insurance company has a duty to act in good faith towards its insured when carrying out its duties. *CyrusOne, L.L.C. v. Great Am. Ins. Co.*, 2021-Ohio-1971, ¶ 71 (1st Dist.). Where an insurer breaches this duty, an action in tort can be brought against the insurer. *Eddy v. Farmers Property Cas. Ins. Co.*, 2024-Ohio-1047, ¶ 20 (1st Dist.).[2] "Bad faith can be found where an insurer's actions are 'not predicated upon circumstances that furnish reasonable justification therefor.'" *Id.*, quoting *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552 (1994), paragraph one of the syllabus. An insurer's actions are without reasonable justification when they are arbitrary or

---

[2] Because the bad-faith claim is an action in tort and not in contract, it did not arise "under this insurance" and is not barred by the suit-limitation provision in the insurance policy. *See Scott Fetzer Co. v. Am. Home Assur. Co., Inc.*, 2023-Ohio-3921, ¶ 23 ("That a bad-faith claim can be litigated only between the parties to an insurance contract does not mean that the contract creates it. Importantly, a bad-faith claim is not rooted in any particular text of the contract.").

capricious. *Id.* Bad-faith claims can include "footdragging" by an insurer in its handling and investigation of a claim. *Id.* But summary judgment is appropriately granted to an insurer "where the record is devoid of evidence tending to show a lack of good faith on the part of this insurer." *Drouard v. United Servs. Auto. Assn.*, 2007-Ohio-1049, ¶ 17 (6th Dist.).

**{¶45}** Eastlawn alleged multiple instances of conduct by State Auto in the handling of its claim that Eastlawn believes were done in bad faith. Several of these allegations, including that State Auto withheld important policy information, failed to disclose the coverage limit for the increased cost of construction, and failed to send a reservation of rights letter explaining its intention to rely on an exclusion and to alert the insured of terms and conditions that might limit coverage, do not support a claim of bad faith. It was not State Auto's responsibility to inform Eastlawn of the terms of its policy or that the insurer intended to enforce the policy's terms and limits. Eastlawn had an obligation to review its policy and know the coverage that it contained. *Amankwah v. Liberty Mut. Ins. Co.*, 2016-Ohio-1321, ¶ 10 (1st Dist.) (holding that Ohio law recognizes that an insured has a duty "to review the insurance policy and know the extent of insurance coverage issued").

**{¶46}** But we reach a different conclusion with respect to other actions taken by State Auto that Eastlawn alleges constituted footdragging and were done in bad faith. On multiple instances, State Auto failed to respond to emails from Eastlawn and Paul Davis, despite their repeated attempts to make contact. For example, after receiving Maxwell's spreadsheet regarding the supplemental estimate, Mathein emailed Maxwell on November 20, 2019, to ask if State Auto would be issuing a supplemental check for $215,677.02. When he failed to receive a response, Mathein sent another email in the same vein on December 3, 2019. Maxwell responded to the

latter email the day that it was received, simply stating that he was working on the figures.

**{¶47}** Maxwell, however, never followed up or answered Mathein's question, prompting Mathein to send a third email on December 12, 2019, inquiring about release of the supplemental funds. Despite Maxwell responding that he would "get back to that" later that day, he failed to do so. Approximately a month later, Maxwell still had not answered Mathein's question about whether State Auto would issue a check in the amount of approximately $215,000 for supplemental repairs. So, on January 8, 2020, Scallan emailed Maxwell to request that State Auto issue a check for the supplemental repairs. Scallan sent follow-up emails to Maxwell on January 14 and 16 trying to make contact.

**{¶48}** On January 21, 2020, Maxwell told Scallan that State Auto would process a check that included $135,621.47 for supplemental building repairs and withheld depreciation, as well as $10,000 for code upgrades/increased cost of construction. Despite having previously told Eastlawn that the policy limit for the increased cost of construction would not be paid without a letter from Norwood stating that the code upgrades were required, State Auto ultimately processed the policy limits for the increased cost of construction without receiving such a letter.

**{¶49}** Eastlawn made multiple attempts, beginning on February 16, 2020, to contact Maxwell to inquire about whether State Auto would pay for the remainder of the supplemental repairs. Follow-up emails were sent on February 20, February 28, March 4, and March 6. Despite having already paid the full policy limits for the increased cost of construction, State Auto continued to request documentation from Norwood that it was requiring the code upgrades. According to Maxwell, the documentation was needed so that he could potentially make funds available from

other pockets of money in the policy. This explanation, however, was never provided to Eastlawn or Paul Davis.

{¶50} State Auto also failed to respond to Eastlawn's notification that a lien had been placed on the property. Scallan had emailed Maxwell on May 12, 2020, to tell him about the lien and ask if Maxwell could expedite a meeting with his supervisor. Scallan sent three follow-up emails over the next few weeks.

{¶51} On this record, genuine issues of material fact exist as to whether State Auto acted in bad faith in its handling and processing of Eastlawn's claim. These include whether there was a reasonable justification for State Auto's repeated failure to respond to the insured and its delay in issuing payment. They also include whether State Auto had a reasonable justification for requiring documentation from Norwood regarding the code upgrades. An insurance company certainly has the right to request additional documentation from an insured, but on this record there exist genuine issues of material fact as to State Auto's purpose in requiring the letter from Norwood, specifically whether State Auto had required the documentation to delay payment or to find other pockets of available money in the policy.

{¶52} We accordingly hold that the trial court erred in granting summary judgment to State Auto on the claim for bad faith.

### C. Breach of Contract with Paul Davis

{¶53} With the respect to the claim for breach of contract with Paul Davis, the complaint alleged that State Auto and Paul Davis had entered into a valid contract to perform supplemental repairs and code upgrades in the amount of $215,677.02, that Paul Davis performed its obligations under the contract and completed the supplemental repairs, and that State Auto breached the contract by refusing to issue payment. The complaint further alleged that Eastlawn was an intended third-party

beneficiary of this agreement.

**{¶54}** To succeed on a claim for breach of contract, a plaintiff must establish the contract's existence, performance by the plaintiff, breach by the defendant, and resulting damages suffered by the plaintiff. *White v. Pitman*, 2020-Ohio-3957, ¶ 37 (1st Dist.). In this case, the inability to prove the existence of a contract is fatal to Eastlawn's claim.

**{¶55}** A valid contract is formed where the plaintiff has proved the following elements: "'an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'" *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D. Ohio 1976); *accord Kodu v. Medarametla*, 2016-Ohio-8020, ¶ 9 (1st Dist.).

**{¶56}** The record contains no genuine issues of material fact as to the existence, or lack thereof, of a contract between State Auto and Paul Davis. On November 6, 2019, Mathein emailed Maxwell a supplemental estimate in the amount of $232,977.66 that he explained was for items missed in the initial scope of repairs and for the code upgrades. After review of Mathein's estimate, Maxwell responded to Mathein in a November 18, 2019 email with the subject line "For your review and our discussion." The email included an attached spreadsheet showing the breakdown of the costs for each mechanical bid that Mathein had prepared in the supplemental estimate, the prior agreed estimate in each category, and the resulting balance between the two figures, which was $215,677.02.

**{¶57}** This email and spreadsheet did not constitute an offer to pay Paul Davis $215,677.02 for supplemental repairs. Both the subject line of the email and the context in which it was sent evinced an intent to further discuss the supplemental

estimate and established that it was not an offer to pay. The email's subject line was "For your review and our discussion," and it was sent in reply to Mathein's supplemental estimate.

**{¶58}** After receiving Maxwell's email, Mathein sent two follow-up emails asking Maxwell whether the spreadsheet and email that he had sent meant that State Auto had approved a payment of $215,677.02 for supplemental repairs and code upgrades. Maxwell did not respond to either of these emails. While the lack of response was understandably frustrating to both Mathein and Eastlawn, Maxwell's silence did not transform the email into an offer or provide authorization and approval to proceed with the supplemental repairs and code upgrades for $215,677.02.

**{¶59}** Because no contract was formed between State Auto and Paul Davis, the trial court did not err in granting summary judgment to State Auto on this claim.

### D. Promissory Estoppel

**{¶60}** Eastlawn's claim for promissory estoppel also concerns the payment owed to Paul Davis for the supplemental repairs and code upgrades. The complaint alleged that State Auto agreed to pay Paul Davis $215,677.02 for supplemental repairs and code upgrades, and that Paul Davis and Eastlawn relied upon State Auto's promise of payment for the supplemental work, which Paul Davis performed.

**{¶61}** "To recover on a claim of promissory estoppel, one must prove 1) the offending party made a promise; 2) the promissor reasonably should have expected the promisee to rely on the promise; 3) the promisee did rely on the promise to his detriment; and 4) 'injustice can be avoided only by enforcement of the promise.'" *Centennial Plaza III Invest., L.L.C. v. Centennial Plaza I Invest., L.L.C.*, 2016-Ohio-273, ¶ 23 (1st Dist.), quoting 1 Restatement of Law 2d, Contracts, § 90 (1981).

**{¶62}** The record contains no genuine issues of material fact as to whether

20

State Auto promised to pay Paul Davis $215,677.02 for supplemental repairs and code upgrades, and it establishes that State Auto made no such promise. As explained in our discussion of the claim for breach of the contract with Paul Davis, the email that Maxwell sent to Mathein containing the $215,677.02 figure bore the subject line "For your review and our discussion." It did not contain a promise to pay, and it was not reasonable for Paul Davis and/or Eastlawn to have interpreted it as such. In fact, the record shows that they did not reasonably interpret the email as a promise to pay because they sent follow-up emails asking what Maxwell's email meant.

**{¶63}** We accordingly find that the trial court did not err in granting summary judgment to State Auto on Eastlawn's claim for promissory estoppel.

### E. Negligent Misrepresentation

**{¶64}** To succeed on a claim for negligent misrepresentation, a plaintiff must establish that (1) the defendant, while in the course of her or his business, profession or employment, or in a transaction in which defendant has a pecuniary interest, (2) supplied false information for the guidance of others in their business transactions, (3) failed to exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff justifiably relied on the information and suffered pecuniary loss. *Shertok v. Wallace Group Gen. Dentistry for Today, Inc.*, 2020-Ohio-4369, ¶ 46 (1st Dist.); *accord Woods v. Sharkin*, 2022-Ohio-1949, ¶ 66 (8th Dist.). "A claim for negligent misrepresentation requires an affirmative false statement." *Shertok* at ¶ 46.

**{¶65}** Eastlawn argues that the trial court's grant of summary judgment to State Auto on this claim was in error because State Auto provided false and misleading information and omitted material facts in its dealings with Eastlawn. To the extent that the claim for negligent misrepresentation asserts that State Auto omitted material

facts in its dealing with Eastlawn, including by concealing coverage limits for the increased cost of construction, the claim fails because it does not involve an "affirmative false statement." *See id.*

**{¶66}** Eastlawn asserts that State Auto provided false and misleading information when (1) it told Eastlawn and Paul Davis that a letter from Norwood stating that the code upgrades were required was necessary before payment could be made for repair costs covered under the policy's additional coverage for the increased cost of construction, (2) it represented in Maxwell's November 12, 2019 email to Eastlawn that there were no problems with the supplemental estimate and it would be processed for payment, and (3) it told Eastlawn on December 3, 2018, that there were other available pockets of money in addition to the building limit. We address each contention in turn.

**{¶67}** Maxwell testified that a letter from Norwood stating that the code upgrades were required was necessary in order for payment for the increased cost of construction to be issued *and* that it was needed so that he could determine if any of the repairs marked as code upgrades could be covered under other available "buckets" of money in the policy. Even if State Auto's statement that this letter was required before payment could be issued can be considered a false representation, State Auto ultimately paid the coverage limits for the increased cost of construction without receiving the referenced letter. State Auto was first presented with Mathein's supplemental estimate, including code upgrades, in November of 2019, and State Auto paid the full policy limits for the increased cost of construction in January of 2020. Any pecuniary loss that Eastlawn may have suffered was not caused by its reliance on State Auto's statement regarding a letter from Norwood.

**{¶68}** We next consider Eastlawn's assertion that Maxwell's November 12,

22

2019 email contained false statements of fact. In this email sent to Scallan, Maxwell stated that he had received the supplemental estimate from Mathein, that he had asked Mathein for supporting documentation, and that after the requested documentation was received and reviewed, Maxwell would "ask any additional questions that need to be asked and then process payment for same." Contrary to Eastlawn's assertion, State Auto did not represent in this email that there were no problems with the supplemental estimate and that it would be processed for payment. Rather, the email plainly stated that additional documentation was needed and that, pending review of that documentation, further questions could be asked. The email, therefore, contained no affirmative false representation.

{¶69} Eastlawn's remaining assertion, that State Auto told Eastlawn on December 3, 2018, that there were other available pockets of money in addition to the building limit, also does not support a claim for negligent misrepresentation. This statement occurred during the meeting between Maxwell and Scallan the day after the fire occurred and was neither false nor a misrepresentation. In addition to the building coverage limit, the policy also contained coverage for debris removal and for the increased cost of construction. While the policy limit for the increased cost of construction was not listed on the declarations page, both additional pockets of money were available to Eastlawn, and would have been known to Eastlawn upon a review of the policy. Further, State Auto paid the full policy limits under both of these available coverages.

{¶70} We hold that the record contains no genuine issues of material fact as to whether State Auto committed negligent misrepresentation, and that the trial court did not err in granting summary judgment to State Auto on this claim.

### *F. Fraud*

**{¶71}** The elements of a fraud claim are "(1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, and (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by reliance." *Pierce v. Durrani,* 2015-Ohio-2835, ¶ 34 (1st Dist.).

**{¶72}** Eastlawn cites numerous instances in which it asserts that State Auto either provided false and misleading information or omitted material facts when dealing with Eastlawn. Several of these same arguments were raised in support of Eastlawn's claim for negligent misrepresentation, and it is not necessary to address them again.

**{¶73}** Eastlawn contends that State Auto concealed coverage limits for the increased cost of construction by not including the coverage limits for this category on the declarations page of the policy. But omission of the coverage limits for the increased cost of construction from the declarations page does not equate to concealment of those limits. Eastlawn was provided with a copy of its policy, which it had a duty to read. *See Amankwah*, 2016-Ohio-1321, at ¶ 10 (1st Dist.). Had Eastlawn read the policy, it would have been aware of the coverage limits under the policy for building coverage, debris removal, and the increased cost of construction. The record establishes that Eastlawn did not comply with its duty to read the policy, as Scallan testified that he briefly glanced at the declarations page and did not look at the individual coverages or limitations contained in the policy.

**{¶74}** We accordingly hold that the trial court did not err in granting summary

judgment to State Auto on the claim for fraud.

### G. Summary of First Assignment of Error

**{¶75}** Eastlawn's first assignment of error is accordingly sustained in part and overruled in part. The trial court erred in granting summary judgment to State Auto on the claim for bad faith, but summary judgment was appropriately granted on all remaining claims.[3]

### III. Review of Trial Court's Granting of Motion to Dismiss

**{¶76}** In its second assignment of error, Eastlawn argues that the trial court erred in dismissing its claim for estoppel.

**{¶77}** We review a trial court's ruling on a Civ.R. 12(B)(6) motion to dismiss de novo. *Elliot v. Durrani*, 2021-Ohio-3055, ¶ 7 (1st Dist.). We must take all factual allegations in the complaint as true and make all reasonable inferences in favor of the nonmoving party. *ISCO Industries, Inc. v. Great Am. Ins. Co.*, 2019-Ohio-4852, ¶ 10 (1st Dist.). "A complaint should not be dismissed for failure to state an actionable claim unless it appears beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *Thomas v. Othman*, 2017-Ohio-8449, ¶ 19 (1st Dist.).

**{¶78}** In support of this claim, the complaint alleged that State Auto is equitably estopped from enforcing the $10,000 policy limit for increased cost of construction because it (1) failed to send a reservation of rights letter, (2) failed to cite the coverage limit for increased cost of construction in any communication sent to Eastlawn for over a year, (3) prepared a supplemental estimate in the amount of

---

[3] The complaint asserted a separate claim for punitive damages. While Eastlawn raises no challenges on appeal to the trial court's grant of summary judgment on this "claim," we note that "[p]unitive damages are not an independent cause of action; rather, they arise incident to compensable harm." *Whetstone v. Binner*, 2016-Ohio-1006, ¶ 20.

$215,677.02, which authorized code upgrades in an amount greater than the policy limit, and (4) made statements to Eastlawn that it would process payments for supplemental repairs and code upgrades. The trial court dismissed this claim, holding that the doctrine of estoppel cannot be used to extend the terms of an insurance policy.

{¶79} "'Equitable estoppel prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment.'" *State ex rel. Sanduskians for Sandusky v. Sandusky*, 2022-Ohio-3362, ¶ 22, quoting *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.*, 1994-Ohio-24, ¶ 30. It generally requires either actual or constructive fraud. *Id.*, quoting *Chavis* at ¶ 30. A party relying on the doctrine of equitable estoppel must establish "'(1) a factual misrepresentation; (2) that the misrepresentation is misleading; (3) that the misrepresentation induced actual reliance which was reasonable and in good faith; and (4) that it caused detriment to the relying party.'" *B.G. Staffing, L.L.C. v. Lancesoft Inc.*, 2022-Ohio-2963, ¶ 13 (1st Dist.), quoting *Hoeppner v. Jess Howard Elec. Co.*, 2002-Ohio-6167, ¶ 43 (10th Dist.).

{¶80} The Ohio Supreme Court has held that "as a general proposition, the doctrine of waiver cannot be employed to expand the coverage of a policy." *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 668 (1992); *see Leibowitz v. State Farm Ins. Co.*, 2016-Ohio-5690, ¶ 8 (9th Dist.) ("The doctrines of waiver and estoppel generally cannot expand the coverage of an insurance policy."); *Cincinnati Mental Health Inst. Inc. v. Osterman*, 1978 Ohio App. LEXIS 7756, *2-3 (1st Dist. Dec. 13, 1978) ("In Ohio and the majority of states, the doctrine of waiver and estoppel is not available to extend the terms of an insurance policy to risks either not covered by the terms or expressly excluded.").

{¶81} Eastlawn acknowledges this general rule, but, relying on *Turner*

*Liquidating Co. v. St. Paul Surplus Lines Ins. Co.*, 93 Ohio App.3d 292 (9th Dist. 1994), argues that there are exceptions to the rule. The *Turner* court recognized an exception to this general rule of law where "the insurer provides a defense to the insured without reserving its rights under the policy for such a period of time as to prejudice the insured, or when the insurer or its agents misrepresent the extent of coverage the insured is purchasing." *Id.* at 299. The exception recognized in *Turner* is not implicated in the case at bar.

**{¶82}** Here, State Auto charged a premium to Eastlawn for the coverage provided under the policy, including the $10,000 policy limit for the increased cost of construction. On the record before us, the doctrine of equitable estoppel cannot be used to expand the contracted-for coverage because State Auto should not be required to pay for a loss for which it charged no premium. *See id.* (recognizing that equitable estoppel generally precludes extending coverage under a policy because "an insurer should not be required to pay a loss for which it charged no premium"); *see also Shannon v. Great Am. Ins. Co.*, 276 N.W.2d 77, 78 (Minn. 1979) ("[I]t would be wholly improper to impose coverage liability upon an insurer for a risk not specifically undertaken and for which no consideration has been paid.").

**{¶83}** We accordingly hold that the trial court did not err in dismissing Eastlawn's claim for estoppel/waiver of the code upgrade coverage limitation, and we overrule the second assignment of error.

### IV. Conclusion

**{¶84}** The trial court's grant of summary judgment to State Auto on Eastlawn's claim for bad faith is reversed. The trial court's judgment is affirmed in all other respects, and this cause is remanded for further proceedings consistent with the law and this opinion.

Judgment affirmed in part, reversed in part, and cause remanded.

**KINSLEY, P.J.,** and **NESTOR, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.